Ricky Paul LANDRY and Katie Landry, Plaintiffs–Appellants,

v.

HUTHNANCE DRILLING COMPANY and/or Huthnance Drilling Contractors, Inc., and Hydril Company and/or Hydril Company, Tubular Products Division, Defendants,

Hydril Company and/or Hydril Company, Tubular Products Division, Defendants–Appellees.

No. 88–4824.

United States Court of Appeals, Fifth Circuit.

Dec. 15, 1989.

Gregory K. Klein, Lawrence N. Curtis, J. Minos Simon, Lafayette, La., for plaintiffs-appellants.

Randall E. Treadaway, Earl S. Eichin, Jr., O'Neil, Eichin & Miller, New Orleans, La., for Hydril Co. and/or etc.

Before THORNBERRY, GARWOOD and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge.

### I. Facts and Proceedings Below

The plaintiffs, Ricky Paul Landry and his wife, sued Huthnance Drilling Company and Hydril Company under the general maritime law. Landry was injured while working for Connor Tong Rental & Service, Inc., as a tong operator on a Huthnance jack-up drilling rig. Exchange Oil & Gas Company chartered the rig and contracted with various companies to run a string of production pipe. Huthnance supplied the rig and drilling crew. Hydril supplied the pipe and connectors. Loomis International, Inc. performed internal testing for leaks and contracted with Connor to connect the pipes.

Each service company had a representative aboard the rig. There was a close working relationship between Hydril and the tong operators aboard the rig. The production pipe had to be screwed together with connections manufactured by Hydril. The Hydril representative, Irving Estave, inspected the connections and told the tong operators how much torque was to be applied. Landry operated the tongs which screwed the lengths of pipe together.

The tongs are a heavy, hydraulically operated wrench used to connect the pipe. They are attached to a counterweight to make it possible for the tong operator to

manually raise and lower them. Landry rigged up the tongs which involved adjusting the counterweight, but he experienced difficulty in operating them. After struggling with the tongs for several hours, Landry hurt his back. Mallet, the Loomis supervisor, testified that it appeared that part of the equipment was malfunctioning.

There is some dispute as to whether Exchange's representative exercised ultimate authority over the work done by the contractors or whether that authority was delegated to the Hydril representative. Mallet testified that the contractors were informed that Hydril's representative would supervise activities on the rig floor. Mallet's testimony is contradictory, however, because he also stated that if the Hydril representative had a problem with one of the contractors, he had to go to the Exchange man to resolve it.

Regardless of the authority exercised by Hydril, Landry ran the show when it came to actually adjusting the counterweight and working the tongs. When asked whether the Hydril man had anything to do with the rigging of the tongs, Landry admitted "No sir." R. vol. 5, p. 234. Mallet also testified that it was the responsibility of the Connor employees to rig the tongs up and to counterbalance them. R. vol. 4, p. 67. *See also* testimony of Connor employee, Rodrigues, R. vol. 6, pp. 381–82. The manual for operating the tongs makes it clear, moreover, that it was Landry's responsibility to operate the tongs and to do so in a safe manner.

Prior to trial, Landry settled with Huthnance. During the jury trial, the court excluded the testimony of the plaintiffs' expert witness and denied the plaintiffs' motion for a mistrial. The district court granted a directed verdict in favor of Hydril finding that the Hydril representative did not exercise operational control over Landry. The court reasoned that Landry "was the top expert on the rig as far as tong operations were concerned" and that the Hydril representative "operated nothing. He was solely an inspector." Judgment was entered and the plaintiffs now appeal.

The plaintiffs argue that the district court erred in excluding their expert witness, denying their motion for a mistrial, and granting the defendant's motion for a directed verdict. We find that the district court correctly granted a directed verdict and that the other errors urged by the plaintiffs do not constitute grounds for reversal.

## II. Operational Control

Our review of the district court's directed verdict is governed by *Boeing v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969) (en banc).

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury.

*See also Coursey v. Broadhurst*, 888 F.2d 338, 343–44 (5th Cir.1989) and *Strauch v. Gates Rubber Co.*, 879 F.2d 1282, 1285 (5th Cir.1989). The standard for a directed verdict mirrors the standard for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The critical point is that the reviewing court must uphold the directed verdict or the summary judgment if "under the governing law, there can be but one reasonable conclusion as to the verdict." 477 U.S. at 250, 106 S.Ct. at 2511.

The law governing this dispute is well established. A principal is not liable for the torts of an independent contractor unless the principal exercises operational control over or expressly or impliedly authorizes the independent contractor's actions. *See Zepherin v. Conoco Oil Co.,* 884 F.2d 212, 213 (5th Cir.1989); *Boutwell v. Chevron U.S.A., Inc.,* 864 F.2d 406, 407 (5th Cir.1989); *Grammer v. Patterson Services, Inc.,* 860 F.2d 639, 641 (5th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 3190, 105 L.Ed.2d 698 (1989); *Bartholomew v. CNG Producing Co.,* 832 F.2d 326, 329 (5th Cir.1987); *Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548, 549–50 (5th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1593, 99 L.Ed.2d 908 (1988); *Hawkins v. Evans Cooperage Co.,* 766 F.2d 904, 906 (5th Cir. 1985); *Wallace v. Oceaneering Int'l,* 727 F.2d 427, 437 (5th Cir.1984); *McCormack v. Noble Drilling Corp.,* 608 F.2d 169, 174–75 (5th Cir.1979); and RESTATEMENT (SECOND) OF TORTS § 414.

As a preliminary matter we note that the fact pattern underlying the present dispute does not mirror the typical operational control case. Normally the employee of an independent contractor sues the principal and attempts to show that the principal exercised control over the contractor's operations. The present dispute involves a suit by an employee of a subagent of the principal (Exchange contracted with Loomis who in turn contracted with Connor) suing an independent contractor who was allegedly authorized by the principal to exercise authority over the plaintiff's employer. We need not decide whether an independent contractor may be sued by the employee of another independent contractor because the elements which establish liability under the operational control test are lacking.

Hydril owed no duty to Landry upon which a tort suit could be premised. It does not suffice to establish liability that Exchange delegated authority to Hydril to direct matters on the rig floor.[1] Landry must also show that Hydril told him how to do his job:

> In order for [a principal] to be liable for the actions of an independent contractor], the [principal] must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations or deviations. Such a general right is usually reserved to employers, but this does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of right of supervision that the contractor is not entirely free to do the work in his own way.

RESTATEMENT (SECOND) OF TORTS § 414, comment c.

Landry testified that he had to lift the tongs even though the tongs were unbalanced because Estave ordered him to:

> We started running pipe. Then my tongs would come down a little bit, but I was satisfied with them. But Irving [Estave] wasn't satisfied with them, and he kept telling me to pick up my tongs.

R. vol. 5, p. 190. The adjustments which Estave required Landry to make exceeded those which Landry normally made. R. vol. 5, p. 253. Landry argues that Estave's orders create a factual dispute as to whether operational control was exercised and it was improper, therefore, to grant a directed verdict.

The instructions given by Estave, however, do not amount to operational control. In *Grammer, supra,* the independent contractor tested the principal's pipeline. The principal asked the independent contractor to conduct a less stringent test and the plaintiff was injured while conducting the new tests. We rejected the plaintiffs' argument that the principal's instructions constituted operational control. We reasoned "only instructions designating 'how

---

**1.** The evidence regarding delegation of authority is conflicting but in reviewing a motion for directed verdict, we must draw inferences in the non-movant's favor.

**1472**

to' conduct operations merit application of the operational control exception." 860 F.2d at 639. Since the contractor was free to conduct the test in its own way, the principal did not exercise operational control. Estave's instructions to Landry are similar to those given by the principal in *Grammer*. Estave retained the right to inspect the connections, protect the pipe and connectors from damage and to tell Landry the amount of torque to apply. The Hydril representative gave Landry orders because he wanted certain results reached—to protect the pipe and connectors from damage while torque was applied—but he never told Landry how to do his job. He never told Landry how to rig, counterbalance, raise or lower the tongs. Nor is there evidence that Landry was prevented from further adjusting the counterbalance had he wished to do so.

The other grounds which the appellants argue constitute reversible error do not disturb our decision that a directed verdict was properly granted. The expert whose testimony was excluded had nothing relevant to say on the issue of operational control. Nor does the motion for a mistrial constitute grounds for reversal. The prejudice, if any, to the jury is irrelevant because a directed verdict was properly granted. *See New England Merchants Natl. Bank v. Rosenfield*, 679 F.2d 467, 475 (5th Cir.1982).

### III. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.