557 So.2d 1022 (1990)
Rose Lee FRICK
v.
William C. ENSOR, et al.
No. 89-CA-1000.
Court of Appeal of Louisiana, Fourth Circuit.
February 15, 1990.
H. Muldrow Etheredge, New Orleans, for plaintiff-appellee Rose Lee Frick.
Bienvenu, Foster, Ryan & O'Bannon, John C. Tollefson, New Orleans, for defendants-appellants Mid-South Sports, Inc. and Sphere Drake Ins., P.L.C.
Before SCHOTT, C.J., and KLEES and ARMSTRONG, JJ.
KLEES, Judge.
This is an appeal by the defendant, Mid-South Sports, Inc. ("Mid-South") from a judgment awarding damages to the plaintiff *1023 Rose Lee Frick for an injury sustained while attending a wrestling program promoted by Mid-South.
Miss Frick was attending a wrestling program, promoted by Mid-South, with her cousin, Russell Palazzolo, Jr., at the UNO Lakefront Arena on December 25, 1984. One of the wrestling matches scheduled for that evening featured William Ensor, a/k/a Buddy Landell ("Landell"). After the conclusion of Landell's match, he returned to the locker room. Landell returned to the arena later and became involved with another match in which he was not scheduled to appear. After being forced from the ring by the wrestlers scheduled to be in the ring at that time, Landell returned to the locker room, only to return once again during a subsequent tag team match. However, prior to entering the ring, Landell was met by another wrestler, Hacksaw Jim Dugan. While the scheduled match was going on, Dugan and Landell began to wrestle outside of the ring but within the ring apron, which was cordoned off by metal barricades. There was testimony by Mr. Palazzolo, who stated he attended these programs frequently and that wrestling outside of the ring occurs quite often. By the time Landell and Dugan had finished wrestling, a man was standing in the aisle next to Miss Frick's seat taunting Landell by calling him names such as "mama's boy," "queer" and "fruit". Landell grabbed the unidentified man and threw a punch at him but lost his grip on the man and struck Miss Frick on the inside of the left arm.
Mid-South is an entity which promotes wrestling matches. All wrestlers are considered by Mid-South and are referred to in the contracts entered into between Mid-South and wrestler as independent contractors. Wrestlers are responsible for all of their own benefits, and Mid-South does not provide W-2 forms or withhold taxes. No worker's compensation or unemployment benefits are available to the wrestlers through Mid-South. Mid-South merely leases the arena and schedules the matches. Wrestlers are paid based on a percentage of the "gate."
Miss Frick filed this suit against Landell and Mid-South. However, Landell could not be served so the action against Landell was severed from this suit. The trial court found Mid-South to be negligent in failing to "control the program in such a manner as not to create a dangerous situation." It additionally found that the contract between Mid-South and the wrestlers "by its method of compensation encouraged outlandish behavior." From this judgment Mid-South appeals.
The duty-risk analysis to be applied in negligence cases is comprised of four inquiries:
I. Whether the conduct of which plaintiff complains was a cause-in-fact of the harm;
II. Whether there was a duty on the part of the defendant which was imposed to protect against the risk involved;
III. Whether there was a breach of that duty; and
IV. Damages.
The first inquiry, is a question of fact. Great deference is granted to the findings of the trier of fact, be it jury or judge. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Dominque, 365 So.2d 1330 (La.1978). Mid-South's failure to intervene or impose sanctions on wrestlers who fight on the ring apron may have been considered the conduct complained of. However, such an omission can hardly be said to be a direct cause of Landell's attack on a spectator. Another "cause" might have been the failure to provide adequate or additional security. All evidence elicited at trial, including the testimony of plaintiff and her cousin, was that no amount of additional security could have prevented the incident from occurring. Still another act which might have been considered the cause-in-fact is Mid-South's method of compensation of the wrestlers. The trial court stated in its reasons that the method of compensation by Mid-South promoted "outlandish behavior." The evidence in the record does not support such a finding.
Nevertheless, even assuming the trial court's findings of fact, we find that the duty of Mid-South did not encompass the risk of an attack on a spectator.
*1024 Duty is a question of law. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984). Generally there is no duty to protect others from the criminal acts of third persons. Harris, supra. The duty is only to provide patrons with a reasonably safe environment in which to watch the wrestling program. Ramsey v. Kallio, 62 So.2d 146 (La.App. 2nd Cir.1952); Harris, supra. There was no evidence that this type of attack on spectators was foreseeable prior to this incident. Plaintiff and her cousin who frequented wrestling matches testified that although wrestlers are often taunted, she nor her cousin had ever seen a spectator attacked. No evidence was adduced to show that any spectators had been attacked by wrestlers at any previous Mid-South or other wrestling program. There were security guards in the arena and barricades separating the ring apron from the spectators. While we sympathize with Miss Frick's injuries, we find that the duty of Mid-South to provide a reasonably safe environment in which to watch the wrestling program was not breached. The risk of an unanticipated assault by a wrestler on a spectator was not included in that duty. The proper party against whom damages should be sought in this case is Landell. See Ramsey v. Kallio, supra.
Accordingly, for the reasons stated, the judgment of the trial court is reversed.
REVERSED.