United States Court of Appeals,

Fifth Circuit.

No. 93-3190.

Leanna M. GRAHAM, wife of David Graham, individually and on behalf of minor child, Kayla J. Graham and as curator of David Graham, Plaintiffs-Appellants,

v.

AMOCO OIL COMPANY, Defendant-Appellee.

May 26, 1994.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before JOHNSON, GARWOOD, and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this personal injury case, we are primarily concerned with the questions of duty and causation. Here, an oil rig worker sustained an injury while working for his employer on the employer's oil drilling rig. At the time of the injury, the employer was operating as an independent contractor for the oil company that owned the platform on which the rig was located. The oil rig worker's wife and child sued the oil company for negligently causing the injury. The district court granted summary judgment to the oil company on the basis that the oil company was not responsible for the negligent acts of the independent contractor and committed no negligent acts itself that caused the injury. Finding no reversible error, we affirm.

I

Amoco Oil Company ("Amoco") owned an offshore drilling platform affixed to the Outer Continental Shelf of the Gulf of

1

Mexico off the State of Louisiana. Amoco hired Dual Drilling Company ("Dual") to drill several wells from the platform. On December 2, 1990, David Graham, a Dual employee, was working on Dual Rig 23 that was located on Amoco's platform. The rig was rated as being capable of drilling wells to 20,000 feet. Amoco ordered and delivered a load of 14,100 feet of 113/40 casing pipe to the Dual rig for the drilling of the well listed as A-3. Pursuant to the contract, a team of Dual employees, supervised by Denis Riley, another Dual employee, unloaded the casing onto the rig. The Dual rig had two cranes affixed to it, and Riley operated one of these cranes as it picked up two lengths of casing from the delivery ship and placed them onto pipe racks onboard the rig. Because of the volume of casing being unloaded, casing and drill pipe covered the floor of the rig. Graham was standing on some of this drill pipe as he helped guide two pieces of casing that Riley's crane was loading onto the pipe racks. Because Graham was standing on the drill pipe, his head was a few feet higher than normal. When the casing swung toward him, Graham ducked, but he was too late as the casing caught his head against the second crane and crushed it leaving Graham in a comatose state.

## II

Graham's wife and child brought this action against Amoco on behalf of Graham for his injuries and on their own behalves for their loss of consortium. The plaintiffs alleged, *inter alia,* that Amoco was negligent in two ways: first, it delivered too much casing to the Dual rig at one time; and second, its "company man"

2

failed to stop the unsafe unloading operation. The district court granted summary judgment to Amoco on the grounds that: (1) Amoco was immune from liability for the acts of Dual as an independent contractor; and (2) Amoco's ordering of the casing was not the legal cause of Graham's injury.

III

We review the summary judgment *de novo* using the same standards that guided the district court. *DFW Metro Line Servs. v. Southwestern Bell Tel. Co.,* 988 F.2d 601, 603-04 (5th Cir.), *cert. denied,* --- U.S. ----, 114 S.Ct. 183, 126 L.Ed.2d 142 (1993). Accordingly, summary judgment is appropriate when, after viewing the facts in the light most favorable to the nonmovants, no material issue of fact exists, and the movant is entitled to judgment as a matter of law. *Id.* at 604.

Louisiana law provides the general rule that a principal is not liable for the negligent acts of an independent contractor acting pursuant to the contract. *Bartholomew v. CNG Producing Co.,* 832 F.2d 326, 329 (5th Cir.1987); *Hawkins v. Evans Cooperage Co.,* 766 F.2d 904, 906 (5th Cir.1985). This general rule has two exceptions under which a principal may be liable when: (1) the suit arises out of the ultrahazardous activities of its independent contractor; or (2) the principal retains operational control over the independent contractor's acts or expressly or impliedly authorizes those acts. *Bartholomew,* 832 F.2d at 329; *Westridge v. Poydras Properties,* 598 So.2d 586, 590 (La.Ct.App.), *writ denied,* 605 So.2d 1099 (La.1992). Further, even though the general rule

3

shields a principal from the acts of its independent contractor that do not fall within the above exceptions, the principal remains liable for its own acts of negligence. *Ellis v. Chevron U.S.A. Inc.,* 650 F.2d 94, 97 (5th Cir.1981); *Smith v. Indiana Lumbermens Mutual Ins. Co.,* 175 So.2d 414, 416 (La.Ct.App.), *writ denied,* 247 La. 1089, 176 So.2d 146 (1965).

In the instant case, we must determine whether Amoco is liable for the acts of Dual under the second exception to the general rule, that is, whether Amoco retained control over, or expressly or impliedly authorized, Dual's unloading activities that resulted in Graham's injury. Further, we must determine if Amoco is liable under principles of negligence for its own independent acts of ordering and delivering the shipment of casing to Dual's rig.

IV

First, the plaintiffs argue that Amoco is liable for the unloading activities of Dual under the second exception to the general rule of immunity for the acts of an independent contractor. Specifically, they argue that Amoco is liable for Graham's injury because it's "company man," Dudley Blanchard, authorized the payment for the extra men necessary to unload the large order of casing, and he inspected the color codes on the casing. Further, the plaintiffs assert that Blanchard was present on the Dual rig during the unloading, saw the unsafe conditions created by the excess amounts of casing stacked on the rig—including the danger that a worker would be pinned against a crane while standing on a stack of drill pipe that covered the floor of the rig—and did not

4

stop the operation.

We are faced, however, with Amoco's contract with Dual that provided:

> Contractor [i.e., *Dual,*] shall be *solely responsible for* the supervision of the following operations of the Rig as appropriate: towing, rigging up, positioning on drilling locations, rigging down, *loading and unloading operations* on and off the Rig, *and* including also such operations onboard said Rig as may be necessary or desirable for the *safety* of said Rig.

(Emphases added).

The contract also provided that although Amoco retained the right to inspect the work site as the project progressed, it was "interested only in the results obtained."

In *Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548, 550-51 (5th Cir.1987), we held that a principal did not retain control over the step-by-step operations of a drilling rig through the presence of a "company man" when the contract provided that the independent contractor was responsible for the performance of all the work, and the principal was interested solely in the results obtained. As we have noted above, the contract here expressly provides that Dual has sole responsibility for unloading and safety activities. Amoco's "company man" only approved the payment of extra workers to handle the unloading of the casing and inspected the color codes on the pipe. This minimal degree of involvement does not amount to a retention of operational control over the unloading activities. *See Williams v. Gervais F. Favrot Co.,* 499 So.2d 623, 626 (La.Ct.App.1986) (holding that periodic inspections by owner did not amount to operational control of construction site

5

managed by independent contractor), *writ denied,* 503 So.2d 19 (La.1987).

It is true, as Graham points out, that in *Bartholomew,* 832 F.2d at 329-30, we held a principal liable for the acts of an independent contractor. There, however, its representative expressly ordered the independent contractor to engage in an unsafe work practice that eventually caused an injury to the plaintiff. There was no such express authorization in the instant case because Amoco's "company man" did not order Dual's employees to engage or not to engage in any unloading practice. *Id.* In any event, it is certainly clear that Amoco did not expressly authorize any of Dual's negligent unloading acts.

Nor do the facts here permit a conclusion that Amoco impliedly authorized the condition that caused Graham's injury. In *Williams,* 499 So.2d at 626, for example, the court held that a principal did not "impliedly or expressly authorize [the independent contractors] to undertake the dangerous ... project which led to the death of the [plaintiff's] husband ... [because] only the [independent contractors] participated in the decision to use [the negligent] procedure." Further, in *Davenport v. Amax Nickel, Inc.,* 569 So.2d 23, 28 (La.Ct.App.1990), *writ denied,* 572 So.2d 68 (La.1991), the court held that neither the express or implied authorization exception applied when the principal's personnel inspected the job site and may have pointed out certain safety violations. In the instant case, the "company man" did not participate in any decision-making process concerning the manner in which the Dual

6

team unloaded and stacked the casing. Nor did the "company man" give any advice concerning safety violations. Instead, the plaintiffs allege that Amoco's "company man" merely observed Dual's employees performing the duties for which the governing contract gave them the "sole" responsibility. Thus, we cannot say that Amoco impliedly authorized the unsafe unloading procedures that caused Graham's injury. We therefore hold as a matter of law that Amoco was not liable for Dual's negligent unloading acts that caused Graham's injury.

V

Second, the plaintiffs argue that Amoco is liable for its own independent acts of negligence. Specifically, plaintiffs allege that Amoco was negligent in creating an unsafe work place by ordering the large load of casing to be delivered to the Dual rig in one shipment without notification to Dual. *See Frick v. Ensor,* 560 So.2d 446, 446 (La.) (holding wrestling promoter liable for the negligent injury of a spectator by a wrestler, who qualified as an independent contractor, because the promoter breached its "duty to ... control the program in such a manner as not to create a dangerous situation"), *rev'g* 557 So.2d 1022 (La.Ct.App.1990); *Ellis,* 650 F.2d at 97 (holding principal liable for injury to independent contractor's employee caused by principal's own negligence). Further, plaintiffs allege that Amoco was negligent when its "company man" saw that Dual's stacking and unloading procedures violated Amoco's safety manual and failed to correct those procedures.

A

The plaintiffs' argument principally concerns the duty, if any, that Amoco owed to Graham. Duty is a question of law. *Harris v. Pizza Hut of Louisiana, Inc.* 455 So.2d 1364, 1371 (La.1984). In *Crane v. Exxon Corp.,* 613 So.2d 214, 221 & n. 7 (La.Ct.App.1992), the Louisiana court defined the principal's duty by reference to its contract with the independent contractor. The Louisiana court held that, under the contract, the principal had no duty to provide a safe work place to the independent contractor's employees. *Id.* Further, in *Kent v. Gulf States Utils. Co.,* 418 So.2d 493, 500 (La.1982), where a worker was injured when a pole he was using touched power lines, the Louisiana Supreme Court held that even though the principal's representative "arguably could have prevented the accident by interjecting himself [into the unsafe situation], ... he had no such duty to [the plaintiff], and is not liable for failing to do so." *See Ainsworth,* 829 F.2d at 551 ("Louisiana law will not support the imposition of liability upon [the principal] for failure to intercede in [the independent contractor's] decision to work without lights."). In the instant case, Amoco's duties were expressly delineated in its contract with Dual. Amoco had the duty to deliver suitable casing, but did not have any duty whatsoever with respect to the working conditions or procedures of the Dual employee—Graham—who was injured as he was supervised by another Dual employee—Riley—while each were performing activities that the contract expressly delegated to Dual.

8

Nor did Amoco assume an ex-contract duty to provide a safe work place. In *Davenport,* 569 So.2d at 28, the Louisiana court rejected the plaintiff's contention that the principal's imposition of a work deadline not provided for in the contract also imposed a duty on the principal to provide a safe work place to accomplish the meeting of that deadline. The contract provided that the independent contractor—not the principal—had the duty to follow safe procedures. *Id.* Similarly, in the instant case, we reject the plaintiffs' contention that ordering and delivering the casing imposed an ex-contract duty on Amoco to provide a safe work place to unload that casing when the contract specifically places all loading and unloading duties upon Dual—not Amoco.[1]

The plaintiffs further argue that Amoco's internal safety manual indicates that certain practices Dual followed were unsafe, i.e., stacking an excessive amount of casing and stacking drill pipe in the walkways, and that the "company man" had the authority and obligation to stop the operation and correct the overstacking problem. The contract, however, expressly states that the contract itself is the sole governing agreement. Furthermore, the contract expressly provides that prior and future contracts, agreements, or work orders will not alter or amend its terms. The contract never adopted Amoco's safety manual; instead, the contract provides that

---

[1]The cases cited by the plaintiffs do not change this result. In *Frick,* 557 So.2d at 1023, the contract, unlike Amoco's contract, did not delineate which party was responsible for working conditions and safety. In *Ellis,* 650 F.2d at 97, the principal negligently left a piece of timber on the work site. In the instant case, only Dual—and not Amoco—placed the drill pipe the rig that allegedly contributed to Graham's injury.

9

Dual shall "observe safe industry working practices." Thus, the express words of the governing contract obviate the plaintiffs' attempt to impose extracontractual standards on the parties. *See Crane,* 613 So.2d at 221.

Finally, Amoco's "company man" did not affirmatively assume any duty to provide Dual's employees with a safe work place simply by observing their unsafe work habits. In *Crane,* 613 So.2d at 221, the principal's representative voluntarily and affirmatively went beyond the contract and reprimanded the independent contractor for various safety violations. The court held that the principal had assumed the duty of monitoring the safety of the job site and then breached that duty by failing to have an unsafe condition corrected. *Id.* In the instant case, Amoco's "company man" did not voluntarily point out safety violations or reprimand Dual's employees for such alleged violations. Accordingly, Amoco cannot be said to have vicariously assumed the duty of providing Graham with a safe work place.

Amoco's only duty was to provide a sufficient amount of casing of suitable quality to case the A-3 well. Amoco's delivery of 14,100 feet of 113/40 casing in one shipment to Dual's rig that was rated with a capability of drilling 20,000 feet did not breach this duty.

B

Even assuming *arguendo* that Amoco had the duty to deliver less casing than it did, and/or the duty to notify Dual of the

exact amount of casing to be delivered,[2] the plaintiffs' claim still fails because of the lack of legal causation. The Louisiana Supreme Court has held:

> Negligence is only actionable where it is both a *cause in fact* of the injury *and* a *legal cause* of the injury. Legal cause requires a proximate relation between the actions of a defendant and the harm which occurs and such *relation must be substantial* in character.

*Sinitiere v. Lavergne,* 391 So.2d 821, 825 (La.1980) (emphases added).

In *Sutton v. Duplessis,* 584 So.2d 362 (La.Ct.App.1991), the Louisiana Court of Appeals explained its view of legal causation in context of a personal injury suit. As opposed to factual, or "but for," causation, the *Sutton* Court defined legal, or "proximate," cause as "any cause which, in natural and continuous sequence, unbroken by any efficient, intervening cause, produces the result complained of and without which the result would not have occurred." *Id.,* at 365 (citations omitted). Further, the *Sutton* Court stated that when an accident results from two negligent acts, "one more remote and one an intervening cause, the presence of the intervening cause prevents a finding of liability on the one responsible for the more remote cause." *Id.* at 365-66 (citations omitted). The *Sutton* Court applied this concept of legal causation in assessing the comparative negligence of a woman whose son ran

---

[2]Amoco submitted a "Form 46" that states the amount of pipe to be used on well A-3 to the district court. Although the form is dated two months before the accident and would have put Dual on notice as to how much pipe was being ordered, Dual asserts that it never received the form and, for summary judgment purposes, we accept Dual's version of the facts. *See DFW,* 988 F.2d at 604.

into the street and was struck by a car after she failed to pick him up as classes ended. *Id.* at 364. Although there was factual causation, i.e., the child would not have been injured if his mother had picked him up from school on time, the court held that the mother's negligence did not constitute the legal cause of her son's injury. This was because the school board's negligence superseded any negligence on the part of the child's mother for not picking him up on time. *Id.* 366. The school board violated its policy—and duty—of dealing with the foreseeable possibility that parents would show up late to pick up their children by not keeping a child inside the school building until his mother arrived. *Id.*

Similarly, in the instant case, although we may assume there was factual causation, i.e., Graham would not have been injured by the casing if Amoco had never delivered it, such delivery was not the legal cause of Graham's injury. We reach this conclusion because Dual's negligence in unloading the casing and supervising Graham superseded any arguable negligence on the part of Amoco.

Further, the delivery in and of itself is too remote to constitute the legal cause of Graham's injury. The plaintiffs have been unable to point us to a case in which the order and delivery of goods or materials was held to be the proximate cause of an injury that occurred during unloading of those good or materials. In *United States Steel Corp. v. McCraney,* 257 F.2d 457, 462 (5th Cir.1958), we dealt with a claim involving Mississippi law, and held:

> Under settled law, the loader of a shipment has the right to assume that the consignee or those who are in charge of the

12

> unloading for him will take proper precautions to avoid injury, and where, as here, it appears that plaintiff's injury *was not due at all to* negligence in the *loading but solely to* the failure of plaintiff's employer and of the plaintiff to take proper precautions in *unloading,* it must be held, as a matter of law, that defendant was not negligent.

(Emphases added).

We find this logic compelling in the instant case. Amoco merely ordered and delivered the casing. Amoco could reasonably assume that Dual would properly fulfill the duties to which Dual voluntarily agreed to be contractually bound. In fact, Dual made all decisions after the delivery, including whether to unload the casing, how much of the casing to unload, how and where to stack the casing and drill pipe on its rig, and how to supervise its employees—including Graham. Thus, we hold that the ordering and delivery of the casing was not substantially related to Graham's injury and, thus, did not constitute the cause of that injury. *See Sinitiere,* 391 So.2d at 825.

## VI

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

13