Glenda HEBERT, et al.

v.

CXY ENERGY, INC.

No. Civ.A. 98–0711.

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

Aug. 13, 1999.

Bennett Boyd Anderson, Jr., Anderson & Broussard, Lafayette, LA, for Plaintiffs.

Bruce R. Hoefer, Jr., Anne D. Keller, Adams & Johnston, New Orleans, LA, Robert T. Lorio, Covington, LA, for Defendant.

## MEMORANDUM RULING

DOHERTY, District Judge.

Before this Court is a Motion for Summary Judgment [doc. # 43] filed on behalf of defendant, CXY Energy, Inc. ("CXY"). Defendant's Motion for Summary Judgment is based upon CXY's contention there is no genuine issue of material fact as to whether it is liable to plaintiffs for the death of plaintiffs' decedent, either for the negligent acts of defendant's independent contractor, or for defendant's own alleged acts of negligence.

In summary, defendant asserts the decedent's employer, L & L Sandblasting, Inc. ("L & L"), was, by contract, an independent contractor of CXY. Defendant further asserts it can have no liability for the negligence of its purported independent contractor, L & L, as it exercised no operational control over the details of L & L's work. Defendant further asserts that CXY had no legal duty under existing Louisiana law to intercede for the decedent's safety and, therefore, cannot be lia-

ble to plaintiffs for its own acts of negligence.

In opposing this motion, plaintiffs assert defendant is liable for the alleged negligence of its independent contractor as the operations being performed by L & L were "ultra-hazardous," and/or CXY retained "operational control" over the safety aspects of L & L's operations. Plaintiff further asserts that, at a minimum, CXY had an independent duty to protect the decedent from the harm he suffered. Plaintiff further asserts that, at the least, genuine issues of material fact exist as to whether CXY retained "operational control" over the safety aspect of its independent contractor's operations.

### Background

Plaintiff, Glenda Hebert, individually and on behalf of her minor child, Jamison Hebert, and as legal representative of the estate of her husband, Wendell Hebert, filed suit against CXY claiming wrongful death and survival actions for the death of Mrs. Hebert's husband. Mr. Hebert drowned in the Gulf of Mexico when he fell off of a fixed platform owned by CXY in the midst of performing sandblasting operations under the employ of L & L Sandblasting, Inc. ("L & L") (not named as a defendant in this lawsuit).

It is undisputed that on or about April 7, 1997, Mr. Hebert was working as a sandblaster aboard a platform, 257–D, owned by CXY, when Mr. Hebert fell to his death. It is also undisputed that at the time of Mr. Hebert's death, L & L was working for CXY pursuant to a contract and Master Service Agreement. Moore McCormack Energy, Inc. (now CXY Energy, Inc.) entered into a Master Service Agreement with L & L (Contractor) on September 5, 1988. The Agreement reads in pertinent part:

> 2. Contractor warrants and represents that it will perform such work and/or services with due diligence and in a safe, competent and workmanlike manner. Contractor warrants and represents that

it has adequate and safe equipment in good working order and fully trained personnel capable of safely and efficiently operating such equipment and performing services for MME. Contractor shall comply with all Federal, State and municipal laws, rules and regulations applicable to any part of the work or services.

5. Contractor is an independent contractor, free of control and supervision by MME as to the means or manner of performing all work or services hereunder, MME having contracted herein solely for the result of such work or services. Neither Contractor nor subcontractor or any person used or employed by Contractor or subcontractor shall be deemed for any purpose to be the employee, agent, servant or representative of MME in performance of any work or services, or any part thereof, under this Agreement. The actual performance and supervision of all work or services performed hereunder shall be by Contractor; provided, however, MME and its authorized representatives shall have, at all times, the general right of inspection of the same.

Plaintiffs assert that, in connection with the bid submitted by L & L, CXY included a document entitled "Safety Considerations" along with other bid documents, that contains language relating to operational control of safety by CXY:

1.0 It is CXY's policy to maintain a safe, healthful and efficient working environment for its employees, Contractors and others having business with CXY.... Contractor shall follow CXY's safety requirements, policies and procedures while performing work on any CXY property, including offshore platforms, onshore production facilities, Shorebases and office facilities.

1.4 CXY may elect to inspect the bidders facility and equipment prior to contract award.

1.5 Bidder shall submit with his bid a copy of their safety procedures currently in effect.

2.2 Contractor shall comply with all applicable CXY safety requirements as wells [sic] as any site-specific safety requirements. CXY retains the right to suspend work of the Contractor or terminate the Agreement without penalty, should Contractor fail to comply with the applicable CXY safety requirements.

2.3 Contractor's personnel shall observe common oilfield safety while on the work site. Contractor's personnel shall be alert to hazardous conditions and shall report any such situations to the CXY Inspector or Platform Operator.... Violation of CXY's safety policy will be cause for CXY to request that the Contractor take disciplinary action up to and including immediate removal from the Work.

2.6 Contractor shall permit periodic safety inspections by CXY and shall promptly correct any unsafe condition or practice brought to Contractor's attention.

2.7 Immediately upon award of the Work, Contractor will contact Offshore Division Safety Advisor, Sheldon Hawkins, at (214) 450–4767 and obtain copies of the CXY Safety Guide. Contractor will review and comply with CXY's safety procedures.

As part of the bid package, L & L was required to sandblast and paint the underneath side of the cellar deck of the 257–D. The cellar deck is the lowest deck of the platform which is located approximately 40 to 50 feet above the surface of the Gulf of Mexico. To work underneath the platform, catenary scaffolding was used which involves stringing two parallel ⅜ inch wire ropes across the underneath side of the platform. A scaffolding board (or "pic" board) is then laid across the two scaffolding wires from which workers are able to blast and paint. A routine part of this operation requires workers to "walk the wire" to move the pic board to different

locations along the wire. At the time of Mr. Hebert's death, the above system had manila ropes serving as chokers (vertical drop lines which prevent the main line from sagging). Mr. Hebert was attempting to move a pic board around one of these manila choker ropes at the time of his accident.

Carl Courville was the L & L superintendent in April of 1997. Courville's job was to oversee jobs L & L was performing in the Gulf of Mexico and onshore, to insure that L & L "did all of [our] work safely and within the budgets that we have allotted." Courville Depo., pp. 8–9. Courville stated in his deposition that it was L & L's duty and responsibility to enforce and monitor L & L's own safety manual and safe practices for this blasting and painting job. Courville further testified in his deposition that he did not expect anyone from CXY to walk around with L & L's safety manual and assure that L & L was complying with its own manual. Courville Depo., pp. 24–25.

Courville further stated that L & L furnished the labor, the supervision, the materials, the tools and all other items necessary to perform the work and service for CXY on the 257–D job. L & L's superintendent understood that CXY relied upon the professional expertise of L & L in the painting and sandblasting business when L & L was hired. Courville Depo., pp. 21–22.

Courville, himself and Ricky Marcantel, the L & L foreman on the job, stated in their depositions that the two of them and each L & L worker were responsible and in charge of safety on the 257–D job. Courville made his visits and checked to make sure rigging and safety was being followed. Marcantel was responsible for rigging and safety on a daily basis. Further, each and every man on the 257–D job was responsible for his own safety and responsible to make sure that what he was doing was either rigged properly or that he was wearing the correct safety gear to do that job. Courville Depo., pp. 39–40;

Ware Depo., p. 35; Marcantel Depo., pp. 69–70.

On or about April 7, 1997, the date of Mr. Hebert's accident, Bobby Ware, a fellow employee, witnessed Mr. Hebert's accident. Ware describes the accident in his deposition as follows:

I remember we had—we was blastin' on the platform. Then they had cut us off 'cause the boat had come. We had to unload it. We had some sand bags and some—a basket of some other stuff; hose, blast hose and air lines we had to get off of it. And Wendell he was operatin' the crane.

And then after we go through with that when we started back I asked him if he would help me move my pick board because I was finished where I was at, and he said all right, and he come in—he comes in a different direction than I do. I go down a stairway and had to slide on the drain line. And then he got on my pick board. I watched him as he come across. And I asked if he wanted me to get on the other side, and he said no, get back on that drain line, and he said I'll get it.

And he picked it up the first time. He couldn't get it, and I asked him and if he wanted me to give him some more slack in the other end where he could shove it where it would be easier. He said no, stay right where you're at. That's when he kind of like squatted down and put it on his thighs and pushed it. And that's when it—like the cable just snapped out, went out from under his feet, and he just went straight down.

Ware Depo., pp. 40–41.

Ware states he had his own safety lanyard hooked up at the time of the accident but that he specifically saw Mr. Hebert unhook his lanyard before he squatted down. Ware Depo., p. 47. Ware did not see Mr. Hebert rehook himself. Ware Depo., p. 48. CXY had no employee on the 257–D platform at the time of Mr. Hebert's accident. The only CXY repre-

sentative on the platform at the time of the accident was a contract production gauger, Keith Clement. Ware Depo., p. 85.

## Law and Analysis

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." The burdens on the moving and non-moving parties at the summary judgment level are crucial. The United States Supreme Court has stated that "a party seeking summary judgment always bears the initial responsibility of informing the District Court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, Rule 56 does not require the moving party to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

When the non-movant bears the burden of proof at trial, the movant may discharge its burden by showing that there is an absence of evidence to support the non-movant's case. *Id.* at 325, 106 S.Ct. 2548. Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion should be granted so long as whatever is before the District Court demonstrates that the evidence which does exist does not present a disagreement to require submission to a trier of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court explains that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

After a proper summary judgment motion has been made, "Rule 56(e) … requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. The plaintiff cannot meet this burden by presenting argument or facts alleged in the complaint, it must be met by presenting evidence. *Solo Serve Corp. v. Westowne Associates,* 929 F.2d 160, 164 (5th Cir.1991). The evidence produced must create a fact issue concerning the existence of every component of the non-movant's case. *Dunn v. State Farm Fire & Casualty, Co.,* 927 F.2d 869, 872 (5th Cir. 1991). The non-movant may not rely upon the theoretical possibility that its claim is valid. *Pennington v. Vistron Corp.,* 876 F.2d 414, 426 (5th Cir.1989).

### B. Independent Contractor

The CXY production platform upon which Mr. Hebert was working when he fell to his death is located in Federal waters on the Outer Continental Shelf in the Gulf of Mexico, adjacent to Louisiana. Therefore, Louisiana law applies under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333(a)(2)(A), as surrogate federal law. *Rodrigue v. Aetna Cas. & Sur. Co.,* 395 U.S. 352, 355, 89 S.Ct. 1835, 1837, 23 L.Ed.2d 360 (1969).

Under Louisiana law, as a general rule, a principal is not liable for the negligent acts of its independent contractor committed while performing duties under a contract. *Coulter v. Texaco, Inc.,* 117 F.3d 909, 911 (5th Cir.1997); *Graham v. Amoco Oil Co.,* 21 F.3d 643, 645 (5th

Cir.1994); *Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548, 549 (5th Cir.1987). This general rule has two exceptions. A principal may be liable when: (1) the suit arises out of the ultra-hazardous activities of its independent contractor; or (2) the principal retains operational control over the independent contractor's acts or expressly or impliedly authorizes those acts. *Coulter,* 117 F.3d at 912; *Graham,* 21 F.3d at 645; *Ainsworth,* 829 F.2d at 549.

■ As to the first exception, a principal may not avoid liability for injuries resulting from ultra-hazardous activity by hiring out the work to an independent contractor. *Id.* "Ultra-hazardous" activities include pile driving, storage of toxic gas, blasting with explosives and crop dusting; this Court must consider whether painting and sandblasting operations are also to be considered ultra-hazardous. *Id.*

■ Whether an activity qualifies as ultra-hazardous in Louisiana is a question of law. *Id.* at 550. Ultra-hazardous activity is defined by three factors, all of which must be present: "(1) the activity must relate to land or some other immovable; (2) the activity itself must cause the injury, and the defendant must be engaged directly in the injury-producing activity; and (3) the activity must not require substandard conduct to cause injury." *Id.; Triplette v. Exxon Corp.,* 554 So.2d 1361, 1362–63 (La. App. 1st Cir.1989). This Court need not consider the first element of this definition as painting and sandblasting operations do not satisfy the second and third elements. The second element is not satisfied because CXY was not engaged directly, or indirectly, in the injury-producing activity, i.e., the moving of the pic board by Mr. Hebert at the time of the accident for the initial rig up of the blasters' equipment. As stated above, the only CXY representative on the platform at the time of Mr. Hebert's accident was a contract production gauger. As a production gauger, Clement's job was to watch the gauges, make sure his equipment was running and

make sure the platform did not shut in. Ware Depo., pp. 101–102.

The third element requires that the activity "can cause injury to others, even when conducted with the greatest prudence and care." *Kent v. Gulf States Utilities Co.,* 418 So.2d 493, 498 (La.1982). Plaintiffs assert that the "only issue is whether sandblasting on catenary scaffolding approximately 50 feet above the surface of the Gulf of Mexico is an activity which can cause death or serious injury without substandard conduct." See Plaintiffs' Opp. to CXY's Motion for Summary Judgment, p. 9. Plaintiffs further assert Mr. Hebert fell to his death despite the fact that he exercised due care. However, defendant asserts, and this Court agrees, the testimony of plaintiffs' proposed liability expert and defendant's liability expert, Gerard J. Duhon, unequivocally establishes that painting and sandblasting operations, like those being performed by Mr. Hebert at the time of his accident, can be, and are, accomplished safely when the proper precautions are used. Duhon Depo., p. 180. Plaintiffs have provided this Court no evidence to contradict Duhon's deposition testimony.

As all three of the elements required for an activity to be deemed "ultra-hazardous" have not been met, this Court finds that painting and sandblasting operations are not ultra-hazardous. This Court has discovered no Louisiana cases holding otherwise nor has counsel brought any such cases to this Court's attention.

■ The second exception imposes liability upon a principal for the negligent acts of an independent contractor when the principal retains or exercises operational control. *Ainsworth,* 829 F.2d at 550.

In *Coulter,* the Fifth Circuit stated that "[t]esting for this operational control exception first requires an examination of whether and to what extent the right to control work has been contractually reserved by the principal." *Id.* Defendant CXY has provided this Court with the

Master Service Agreement between Moore McCormack Energy, Inc. (predecessor to CXY Energy, Inc.) and L & L which expressly defines the relationship between CXY and L & L in paragraphs 2 and 5, *supra.*

Defendant argues, and this Court agrees, CXY surrendered its right to control the details of the sandblasting and painting services by L & L and guaranteed that the contractors remained free to perform the work in their own manner. For purposes of determining operational control, the relevant inquiry becomes whether CXY had control over the operation of the particular activity during which the plaintiff was injured. *Robertson v. Arco Oil & Gas Co.,* 948 F.2d 132, 133 (5th Cir.1991). The undisputed facts provided this Court by CXY clearly show CXY left control over this operation in the hands of its contractor, L & L. As stated above, Mr. Hebert was supervised by an L & L employee, not a CXY employee, in the course of painting and sandblasting operations which caused Mr. Hebert to help a co-employee move his pic board, the activity with which Mr. Hebert was involved immediately prior to his death. Plaintiffs have provided this Court no evidence to contradict defendant's assertions.

Plaintiffs assert that because CXY required L & L to observe CXY's safety guidelines, CXY retained "operational control." However, the Fifth Circuit has determined that despite an agreement between the contractor and the principal requiring the contractor to abide by the principal's safety regulations, the principal does not retain operational control. *Le-Jeune v. Shell Oil Co.,* 950 F.2d 267, 269 (5th Cir.1992). In *LeJeune,* the plaintiff was an employee of an independent contractor of Shell who was injured while spray painting the bottom of a pipe rack. Shell publishes a safety guidelines manual which was intended for use by contractors in formulating their own safety procedures. *Id.* at 269. Shell's manual contains safety procedures which contractors

are expected to follow. *Id.* Further, the manual required that a contractor's work could not begin until Shell issued a safe work permit. *Id.* Such a permit could not be issued until Shell and the contractor had jointly inspected the area to be worked on. *Id.* In addition, Shell was to give explicit instructions to the contractor to warn him of any potential safety problems, special precautions or protective equipment which may be required. *Id.*

The contract between Shell and its contractor provided that, "[c]ontractor shall act as an independent contractor on all work covered by this contract. He shall maintain complete control over and have full responsibility for his employees." Moreover, "[c]ontractor shall perform all work diligently, carefully and in a good workmanlike manner, shall furnish all labor, supervision, machinery, equipment, materials and supplies necessary therefore...." The contract further stated, regarding safety:

> The contractor shall perform all work in such a manner as to cause a minimum of interference with buyer's operations, and shall take all necessary precautions **(including those required by the buyer's safety regulations)** to protect the premises and all persons and property thereon from damage or injury and shall assume responsibility for the taking of such precautions by employees, agents, permitters and subcontractors.

(emphasis added). The Fifth Circuit found that according to the contract, the contractor was responsible for safety and for supervision. *Id.*

In *LeJeune,* the Fifth Circuit quoting *Landry v. Huthnance Drilling Co.,* 889 F.2d 1469, 1471 (5th Cir.1989), reiterated that for a principal to be liable for the actions of an independent contractor, the principal must have retained at least some degree of control over the manner in which the work was done. *Id.* The Fifth Circuit further stated, "[i]t is not enough that he has merely a general right to order the work stopped or resumed, to inspect its

progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations or deviations.... There must be such a retention of right of supervision that the contractor is not entirely free to do the work in his own way." *LeJeune*, 950 F.2d at 270, quoting *Landry*, 889 F.2d at 1471. Based on this qualification and the facts as stated above, the Fifth Circuit found Shell did not retain operational control in its contract with its contractor. *Id.*

In *LeJeune*, the plaintiffs further asserted that Shell's safety manual implicated Shell's retention of operational control. *Id.* However, the Fifth Circuit cited *Triplette*, 554 So.2d at 1363 and *Duplantis v. Shell*, 948 F.2d 187, 193 (5th Cir.1991) to support its finding. *Id.* In *Triplette*, the Louisiana First Circuit found that,

> even though the contract required that [the contractor] comply with [the principal's] safety standards, this requirement does not signify the requisite right of operational control sufficient to vitiate the independent contractor relationship. The test for determining owner-independent contractor status is direct supervision over the step-by-step process of accomplishing the work.

554 So.2d at 1363. The *Duplantis* court found that "[t]he fact that a principal takes an active interest in the safety of the employees of its independent contractor does not, in and of itself, constitute direct operational control." 948 F.2d at 193. This Court finds, based on *LeJeune* and the cases cited therein, CXY did not retain operational control in its contract with L & L despite the language found in the document, "Safety Considerations" cited by plaintiffs.

Although plaintiffs have asserted CXY retained "operational control," the Fifth Circuit has stated that "absent an express or implied order to the contractor to engage in an unsafe work practice leading to an injury, a principal ... cannot be liable under the operational control exception." *Id.*

In the case *sub judice*, plaintiffs have not provided this Court any evidence or indication that CXY, the principal, made any such express or implied order to L & L to engage in unsafe work practices which led to the decedent's death. Rather, the unrefuted evidence provided this Court by CXY shows that L & L employees were responsible for and in charge of rigging and safety in day to day operations aboard the 257–D CXY production platform. Plaintiffs assert a question of fact exists regarding whether Mr. Hebert had hooked his lanyard immediately prior to his fall. Plaintiffs further assert that Ware's deposition establishes the uncertainty of this fact. However, this Court finds that the question of fact as to Mr. Hebert's actions immediately prior to his death is not a genuine issue of material fact required to defeat summary judgment. The issues before this Court are whether plaintiffs' suit arises out of the ultra-hazardous activities of L & L and whether CXY retained operational control over L & L's acts or whether CXY expressly or impliedly authorized L & L acts. Plaintiffs' asserted question of fact would be relevant to these issues only if this Court had been presented with evidence that a CXY employee had told Mr. Hebert to unhook his lanyard. No such evidence has been brought to this Court's attention. Therefore, no genuine issue of material fact exists.

For these reasons, this Court finds defendant has carried its burden establishing that CXY could not be liable for the negligence of its independent contractor. Plaintiffs have failed to meet their burden of proving an element of their wrongful death and survival action claims against CXY. Therefore, CXY could not be liable to plaintiffs for Mr. Hebert's death allegedly caused by the negligence of its independent contractor, L & L.

### C. La.Civ.Code art. 2315

■ Although the general rule concerning principals and independent contractors

shields a principal from the acts of its independent contractor that do not fall within one of the two exceptions explained above, the principal, here CXY, remains liable for its own acts of negligence. *Graham*, 21 F.3d at 645. Plaintiffs' complaint concerns the duty, if any, CXY owed to Mr. Hebert. *Id.* In *Graham*, the Fifth Circuit stated that:

> Duty is a question of law. [citation omitted]. In *Crane v. Exxon Corp.*, 613 So.2d 214, 221 at n. 7 (La.Ct.App.1992), the Louisiana court defined the principal's duty by reference to its contract with the independent contractor. The Louisiana court held that, under the contract, the principal had no duty to provide a safe work place to the independent contractor's employees. *Id.* ... In the instant case, [the principal's] duties were expressly delineated in its contract with [the independent contractor].

*Graham v. Amoco Oil Co.*, 21 F.3d at 647.

In *Ainsworth*, the Fifth Circuit stated that "Louisiana law will not support the imposition of liability upon [the principal] for failure to intercede in [the independent contractor's] decision to work without lights." 829 F.2d at 551. Defendant argues, and this Court agrees, that Louisiana law does not support imposition of liability upon CXY for failure to intercede in L & L's work procedures. Accordingly, no basis for establishing a legal duty of CXY to the decedent exists and in turn, no basis for establishing a legal duty of CXY to plaintiffs. Plaintiffs have failed to establish that CXY had a legal duty to the decedent. Therefore, plaintiffs have failed to prove an element of their claims against CXY for its own alleged acts of negligence.

For these reasons, this Court finds defendant has carried its burden establishing that CXY could not be liable for its own alleged acts of negligence as it had no legal duty to the decedent. Plaintiffs have failed to meet their burden of proving an element of their negligence claims against CXY. Therefore, CXY could not be liable to plaintiffs for the decedent's death allegedly caused by the negligence of CXY.

## Conclusion

In conclusion, because this Court finds there are no genuine issues of material fact as to whether CXY is liable to plaintiffs for the negligence of its independent contractor, L & L, or for its own alleged acts of negligence, this Court hereby GRANTS the Motion for Summary Judgment [Doc. # 43] of defendant, CXY Energy, Inc. As CXY is the only named defendant in this matter and is now dismissed on summary judgment, counsel are ORDERED to submit an agreed upon judgment to this Court within 15 days of receipt of this Memorandum Ruling reflecting this Court's decision herein.