Stanley **DUPLANTIS** and his wife, Melissa **Duplantis**, Plaintiffs–Appellants,

v.

**SHELL OFFSHORE, INC.,** Defendant–Appellee.

No. 91–3165
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Dec. 6, 1991.

Perrin C. Butler, Robert C. Stern, Butler & Stern, Metairie, La., for plaintiffs-appellants.

Michael Mossy Christovich, John K. Leach, Christovich & Kearney, New Orleans, La., for defendant-appellee.

Before REYNALDO G. GARZA, SMITH and WIENER, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

In this case we examine the propriety of the district court's grant of summary judgment in favor of defendant Shell Offshore, Inc. ("Shell"), and against plaintiffs Stanley and Melissa Duplantis. Plaintiffs allege that Stanley Duplantis[1] was injured when he slipped on a grease-covered board while working on an oil platform owned by

---

**1.** The Court refers to Stanley Duplantis throughout by both his surname and his Christian name to avoid confusion. Defendant Shell's "company man" aboard the rig/platform was Mark Duplantis (no relation). Shell also had a safety man who visited the rig/platform by the name of Walter Duplantis (no relation).

Shell on the Outer Continental Shelf off the Louisiana coast in the Gulf of Mexico. For the reasons stated below, we affirm the judgment of the district court.

## BACKGROUND

Plaintiffs brought this suit against Shell on June 21, 1990. Plaintiffs sought to recover damages for personal injuries that Stanley Duplantis alleges he sustained on March 28, 1990, while employed by Grace Offshore Company, formerly Booker Drilling Company ("Grace/Booker"). Stanley Duplantis was working as a roustabout aboard Grace/Booker's Rig 950 situated atop a platform owned by Shell in the Gulf of Mexico off the Louisiana coast. Plaintiffs allege that Stanley Duplantis was injured as a result of Shell's negligence when he stepped on a piece of two-by-four covered with grease after his supervisor, Grace/Booker crane operator Roland Boudoin, instructed him to pick up and carry a piece of wood and place it on an existing wood stack in a particular area of the platform. Stanley Duplantis fell on the padeye of the cover of a pedestal crane belonging to Shell. Shell answered on August 1, 1990, denying all allegations of negligence.

On January 8, 1991, after discovery was to have been completed according to the Minute Entry, Shell moved for summary judgment. After receiving Shell's motion, plaintiffs moved to extend the discovery cutoff date. Shell opposed the motion, but discovery was extended until February 1, 1991. In the interim, plaintiffs moved to continue the hearing date on Shell's summary judgment motion. Shell opposed plaintiffs' motion, which was nevertheless granted and the hearing was continued from its original date of January 23, 1991 until February 6, 1991.

On February 7, 1991, the district court issued a Minute Entry granting summary judgment in favor of Shell and dismissing all claims asserted by plaintiffs with prejudice and with all parties to bear their own costs. On February 15, the district court entered Judgment in accordance with the Minute Entry. Plaintiffs filed a Notice of Appeal four days later.

## ANALYSIS

After reviewing the evidence and inferences to be drawn therefrom in the light most favorable to the nonmoving party, *Duvall v. The Ritz Carlton Hotel Co.*, 946 F.2d 418, 420 (5th Cir.1991), a district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Moreover, "this Court reviews the grant of summary judgment *de novo*, using the same criteria used by the district court in the first instance." *Abshire v. Gnots–Reserve, Inc. (In re Cooper/T. Smith)*, 929 F.2d 1073, 1076 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 190, 116 L.Ed.2d 151 (1991) (*citing Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir.1988)).

A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, "the substantive law will identify which facts are material." *Id.* Having reviewed the record, we are persuaded that the district court correctly determined that there is no genuine issue of material fact and that Shell is entitled to judgment as a matter of law.

*I. No Genuine Issue of Material Fact Exists Regarding the Board or the Crane Cover.*

Plaintiffs claim that a genuine issue of material fact exists regarding who is responsible for the greased board on which Stanley Duplantis allegedly slipped and whether Shell positioned the crane cover negligently. If Shell was negligent, plaintiffs claim that it would be liable under Louisiana law. *See* LA.CIV.CODE ANN. arts. 2315 and 2317 (West 1979 and 1991 Supp.).

Shell submitted several affidavits of Grace/Booker personnel to supplement the record in support of its motion for summary judgment. The affiants were subsequently deposed. As the district court noted,

> none of the affidavits or deposition testimony submitted indicates that Shell Offshore owned the board in question or placed it in area [sic] where the plaintiff allegedly was injured. On the contrary, witnesses have testified either that the board was owned by Grace, or that it was unknown who owned the board. In addition, there was testimony that it was the responsibility of Grace employees, including the plaintiff, to perform housekeeping duties such as cleaning the rig floor area of hazards.

Most of the witnesses could not say where the board came from. Crane operator Roland Boudoin testified that "it [was] one of the boards that belong[ed] to Grace." None of the witnesses, including Stanley Duplantis, testified that Shell was responsible for the board. Additionally, Shell's affiants testified that the crane cover was stored under the crane pedestal, while Stanley Duplantis testified that part of the crane cover extended beyond the crane. All witnesses testified that the crane cover had not been moved since Booker/Grace began working and Stanley Duplantis admitted that he knew where the crane cover was and that it had been in the same position since he had started working on the rig eight months prior to the accident.

■ Plaintiffs contend that "[a] review of the affiants' deposition testimony demonstrates Shell has *failed* to produce any competent evidence by which the ownership and placement of the board by it could be negated." Plaintiffs have misconstrued Shell's burden on summary judgment according to *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). While it is true that, even if the nonmoving party will bear the burden of proof at trial, "[s]imply filing a summary judgment motion does not immediately compel the party opposing the motion to come forward with evidence demonstrating material issues of fact as to every element of its case," *Russ v. International Paper Co.,* 943 F.2d 589, 591 (5th Cir.1991), it is also true that, if the moving party will not bear the burden of proof at trial, "[e]ver since if not before *Celotex,* '[t]he moving party need not produce evidence negating the existence of a material fact, but need only point out the absence of evidence supporting the nonmoving party's case.'" *Saunders v. Michelin Tire Corp.,* 942 F.2d 299, 301 (5th Cir.1991) (quoting *Latimer v. Smithkline & French Laboratories,* 919 F.2d 301, 303 (5th Cir.1990)).

■ We have recently noted that

> [t]he party that moves for summary judgment bears the burden to establish that its opponent has failed to raise a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) *if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense. Id.*

*Little v. Liquid Air Corp.,* 939 F.2d 1293, 1299 (5th Cir.1991) (emphasis added). Plaintiffs have confused Shell's burden with the burden which they would have had to shoulder had they moved for summary judgment.

Shell, by virtue of its motion supported by affidavits, has adequately pointed out that there is no indication that it was responsible for the grease covered board. Fed.R.Civ.P. 56(e) states, in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is

a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

■ Plaintiffs claim that even if Shell has adequately met its burden according to Fed.R.Civ.P. 56(c), that they, in turn, have met their responsibility under Fed.R.Civ.P. 56(e) by attaching a letter from their expert witness, Mr. Edward B. Robert, Jr. ("Robert"), to their memorandum to the district court in opposition to Shell's summary judgment motion. Robert explicitly states that his analysis was based on statements by Stanley Duplantis, that he had not read other descriptions of the events, and that therefore his analysis was of a preliminary nature. He stated that:

1. It was unsafe and substandard housekeeping practice to leave the grease covered wood piece in or near a walkway where workers were required to traverse. This contaminated two by four should have been disposed of properly or stored in such a manner as to leave the working area free of slipping hazards.

2. The cover with padeye attached, when removed should have been stored away from the walkway such as under the crane pedestal or in some other area to remove any stumbling or tripping hazard.

Robert's principal finding appears to be that the housekeeping was substandard. The testimony in the record, however, clearly indicates that housekeeping on Grace/Booker's rig was the responsibility of Grace/Booker, not of Shell. Regarding the crane cover, while it might have been better positioned, Robert never states that its alleged placement was either unsafe or substandard. Moreover, even if it did pose a stumbling or tripping hazard, Stanley Duplantis alleges that he slipped on a grease covered board, not that he tripped or stumbled on the crane cover.

■ Even if Robert's letter could be read broadly as to mean that the crane cover had been positioned negligently and that by "stumbling or tripping hazard" Robert meant that one might fall upon the crane cover after having stumbled or tripped or, as in this case, slipped on something else, it would avail plaintiffs nothing. Fed. R.Civ.P. 56(e) states, in pertinent part:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent· to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

The Robert letter fails under this Rule. It is unsworn, it is not even in the form of an affidavit and gives no indication that Robert is qualified to render opinions on such matters. It has long been settled law that a plaintiff must respond to an adequate motion for summary judgment with admissible evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 n. 19, 160, 90 S.Ct. 1598, 1609 n. 19, 1609, 26 L.Ed.2d 142 (1970). If the party opposing summary judgment has evidence which has not yet been reduced to admissible form but is germane to the existence of a genuine issue of material fact, then it is proper for the party opposing summary judgment to move for a continuance "to permit affidavits to be obtained or depositions to be taken or discovery to be had ..." Fed. R.Civ.P. 56(f).

Had Robert's letter, which is dated November 15, 1990, been discovered prior to Shell's summary judgment motion, *e.g.*, following a document request by Shell, and if the broad reading of the letter be the proper one, then it is doubtful that Shell could have succeeded on its summary judgment motion without at least taking Robert's deposition. Robert's letter, however, does not suffice for Rule 56(e) purposes.

It is true that the Supreme Court in *Celotex* gave some indication that the non-moving party's Rule 56(e) evidence might not have to be in strictly admissible form.

We do not mean that the non-moving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously,

Rule 56 does not require the nonmoving party to depose her own witnesses. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred.

477 U.S. at 324, 106 S.Ct. at 2553.

We have recently noted that *Celotex* did not alter the settled law that

Rule 56(e) requires the adversary to set forth facts that would be admissible in evidence at trial. Material that is inadmissible will not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial and continuing the action would be useless.

*Geiserman v. MacDonald,* 893 F.2d 787, 793 (5th Cir.1990) (*quoting* 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2727, at 156 (1983)).

■ While some courts have read the first sentence of the quoted paragraph in *Celotex* in isolation and concluded that the Supreme Court meant that the nonmoving party could oppose a summary judgment motion using unauthenticated documents, *see Bushman v. Halm,* 798 F.2d 651, 654 n. 5 (3d Cir.1986); *Catrett v. Johns–Manville Sales Corp.,* 826 F.2d 33, 38 (D.C.Cir.1987), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988), when read in context, it is clear that the Supreme Court meant merely that full depositions were not required, and that other documents listed in Rule 56(c), such as "answers to interrogatories, and admissions on file, together with affidavits," could suffice. We agree with the Ninth Circuit's statement that

[t]he *Celotex* court ... was referring to the other means enumerated in Rule 56(c) for persuading the court that summary judgment is inappropriate including affidavits, which are evidence produced in a form that would not be admissible at trial. The [first sentence of the paragraph] should not be read to allow evidence inadmissible in form if such evidence is not allowed by Rule 56(c).

*Canada v. Blain's Helicopters, Inc.,* 831 F.2d 920, 925 (9th Cir.1987).

To read the *Celotex* Court's statement otherwise is to misconstrue the message implicit in both *Celotex* and *Anderson,* which is that summary judgment is a legitimate and efficient way of disposing of unsupported claims. *See Celotex,* 477 U.S. at 327, 106 S.Ct. at 2554. As one commentator has noted, "[t]he changes in summary judgment procedure heralded by *Anderson* and the initial burden holding in *Celotex* ... are likely to have little impact if the proceedings get bogged down in a needless examination of the hypothetical ways the nonmoving party's evidence might be reduced to admissible form by the time of trial." Melissa L. Nelken, *One Step Forward, Two Steps Back: Summary Judgment After Celotex,* 40 Hastings L.J. 53, 85 (1988). Robert's unauthenticated letter is not the kind of evidence described in Rules 56(c) and 56(e), and it was therefore not the district court's duty to examine whether and how it might be reduced to acceptable form by the time of trial.

## II. Shell did not Maintain Operational Control over Grace/Booker's Operation.

■ Plaintiffs contend that, even if Stanley Duplantis was injured as the result of the sole negligence of Grace/Booker, Shell is nevertheless liable. We have frequently noted that, under Louisiana law, unless the activity in which the injury occurred was ultra-hazardous, *Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548, 549–50 (5th Cir. 1987), *cert. denied,* 485 U.S. 1034, 108 S.Ct. 1593, 99 L.Ed.2d 908 (1988), a contention which plaintiffs do not make, "[a] principal is not liable for the torts of an independent contractor unless the principal exercises operational control over or expressly or impliedly authorizes the independent contractor's actions." *Landry v. Huthnance Drilling Co.,* 889 F.2d 1469, 1471 (5th Cir. 1989).

In *Landry,* we found that

[i]n order for [a principal] to be liable for the actions of an [independent contractor], the [principal] must have retained at least some degree of control over the manner in which the work was done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations or deviations. Such a general right is usually reserved to employers, but this does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of right of supervision that the contractor is not entirely free to do the work in his own way.

*Landry*, 889 F.2d at 1471 (*quoting* RESTATEMENT (SECOND) OF TORTS § 414, comment c).

 We have frequently noted that, under Louisiana law, "the relationship between the principal and the independent contractor is in large measure determined by the terms of the contract itself." *Ham v. Pennzoil Co.*, 869 F.2d 840, 842 (5th Cir.1989). Article XVI of the Master Drilling Agreement under review provides that

[Grace/Booker] is an independent contractor with respect to the performance of all work hereunder and neither Contractor nor anyone employed by Contractor shall be deemed for any purpose to be the employee, agent, servant or representative of Shell in performance of any work or service hereunder. Shell shall have no direction or control of Contractor or its employees and agents except in the results to be obtained. The work performed hereunder shall meet the approval of Shell and be subject to the general right of inspection provided herein for Shell to secure the satisfactory completion thereof.

In *Ainsworth*, 829 F.2d at 550, we concluded that an identical provision in a Shell contract did not render Shell liable for injuries sustained by an employee of the independent contractor. Plaintiffs, however, contend that the activities of Shell's "company man" aboard the rig went beyond the contract and constituted operational control. However, "[t]he mere fact that [Shell] maintained a 'company man' on the drilling rig does not demonstrate that it retained control of the project." *Ham*, 869 F.2d at 842.

The record indicates that Shell's "company man," Mark Duplantis, held safety meetings in conjunction with Grace/Booker personnel and usually initiated the discussions. Moreover, it appears that, prior to Stanley Duplantis's injury, Mark Duplantis had a hand in removing a Booker/Grace crane operator from the job. Mark Duplantis testified that he had observed the crane operator performing his duties in an unsafe manner. Both Mark Duplantis and the chief Grace/Booker employee on the rig, toolpusher Ronald Melancon, testified that Mark Duplantis did not himself have authority to remove a Grace/Booker employee or otherwise give orders to Booker/Grace personnel. Rather, he had to go through Melancon in the form of suggestions or advice. The record does not indicate that Mark Duplantis exercised authority beyond that described in *Landry*.

The district court found that

none of the evidence submitted indicates there is any genuine issue of material fact in dispute regarding whether Shell Offshore controlled the operation of the particular activity during which the plaintiff was injured. *Zepherin v. Conoco Oil Company, Inc.*, 884 F.2d 212 (5th Cir.1989). The fact that Shell Offshore took an active interest in safety on the rig and conducted safety meetings for Grace employees does not rise to the level of control required to come within the exception.

We agree. The fact that a principal takes an active interest in the safety of the employees of its independent contractor does not, in and of itself, constitute direct operational control.

## CONCLUSIONS

We find that Shell adequately supported its motion for summary judgment, and that plaintiffs failed to introduce evidence dem-

onstrating any genuine issue of material fact. We also find no evidence of record that Shell maintained operational control over Grace/Booker's operation. Therefore, the judgment of the district court is

AFFIRMED.