Madeline **KOLP**, Plaintiff,

v.

**NEW YORK STATE OFFICE OF MEN-TAL HEALTH, New York State Department of Audit and Control, New York State Department of Civil Service, Hugh Stock, Plant Manager, New York State Office of Mental Health, Defendants.**

No. 94–CV–6103.

United States District Court, W.D. New York.

Aug. 3, 1998.

Rene F. Hensel, Rochester, NY, for Madeline Kolp.

Carlos Rodriguez, Charles J. Genese, Office of New York State Attorney General, Rochester, NY, William J. Goldman, Office of New York State Attorney General, Rochester NY, Mary H. Doyle, New York State Attorney General's Office Department of Law, Rochester, NY, for New York State Office of Mental Health, New York State Dept. of Civil Service.

Carlos Rodriguez, Charles J. Genese, Office of New York State Attorney General, Rochester, NY, Mary H. Doyle, New York State Attorney General's Office Department of Law, Rochester, NY, for New York State Dept. of Audit and Control.

Mary H. Doyle, New York State Atty., General's Office, Dept. of Law, Rochester, NY, for Hugh Stock.

## DECISION and ORDER

SIRAGUSA, District Judge.

This civil rights hostile work environment sexual harassment suit is before the Court on a motion by defendants, NEW YORK STATE OFFICE OF MENTAL HEALTH, et. al., for an order granting summary judgment [document # 10] pursuant to Federal Rules of Civil Procedure 56 and dismissal of the complaint, and plaintiff MADELINE KOLP's motion to amend the pleadings [document # 14].

During oral argument, plaintiff's counsel conceded that there was no cause of action plead against two of the defendants, NEW YORK STATE DEPARTMENT OF AUDIT AND CONTROL and NEW YORK STATE DEPARTMENT OF CIVIL SERVICE. Therefore, the Court dismisses the complaint as against those two defendants. Further, plaintiff's counsel conceded that he never served defendant HUGH STOCK, PLANT MANAGER, NEW YORK STATE OFFICE OF MENTAL HEALTH. Thus, the complaint against Mr. Stock, individually and as the plant manager, is dismissed. The only remaining defendant is the NEW YORK STATE OFFICE OF MENTAL HEALTH. In a decision rendered from the bench, the Court denied plaintiff's motion to amend the complaint [document # 14] following oral argument on July 30, 1998. However, the Court finds that issues do exist as to material facts, and consequently, the Court denies the defendants' application for summary judgment.

## BACKGROUND

Plaintiff Madeline Kolp, who was employed in various positions at the New York State Office of Mental Health's Rochester Psychiatric Center in Rochester, New York, filed this suit on March 4, 1994, alleging sexual harassment based on a hostile work environment and retaliation for complaining about sexual discrimination. She was hired on or about November 7, 1985, as a part-time food service worker and promoted to positions as a grounds worker and, eventually, motor vehicle operator. She alleges in her complaint approximately eleven instances of sexual harassment in support of her three causes of action: one under the Civil Rights Act of 1871, codified at 42 U.S.C. § 1983; one under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e, et. sec.; and one derivative claim under New York State Human Rights Law. Though she does not cite to a particular section of the Human Rights Law, the Court will assume she is referring to N.Y.Exec.Law § 290 et. seq.

## SUMMARY JUDGMENT STANDARD

The law on summary judgment is well settled. Summary Judgement may only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893 (3rd Cir.1987) (*en banc* ). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the "evidentiary materials of record, if reduced to admissible evidence, would be insuf-

ficient to carry the non-movant's burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

Once the moving party has met its initial obligation, the opposing party must produce evidentiary proof in admissible form sufficient to raise a material question of fact to defeat a motion for summary judgment, or in the alternative, demonstrate an acceptable excuse for its failure to meet this requirement. *Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187 (5th Cir.1991); Fed.R.Civ.P. 56(f). Once the moving party has met its burden, mere conclusions or unsubstantiated allegations or assertions on the part of the opposing party are insufficient to defeat a motion for summary judgment. *Knight v. United States Fire Ins. Co.,* 804 F.2d 9 (2d Cir.1986).

The court must examine the facts in the light most favorable to the party opposing summary judgment, according the non-moving party every inference which may be drawn from the facts presented. *International Raw Materials, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946 (3d Cir.1990). However, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections,* 84 F.3d 614, 619 (2d Cir.1996).

## DISCUSSION

Plaintiff alleges approximately eleven factual circumstances in which she states defendant discriminated against her. The Court identifies those incidents in the order they are presented in her Complaint [document # 1]. In each case, the evidence before the Court shows that the defendant undertook an investigation and used their previously-established discrimination complaint resolution process to either sustain the complaint and issue relief, or find the complaint was unsubstantiated and deny relief. Nevertheless, the Court finds there is a factual issue regarding the effectiveness of defendant's process for addressing and remedying plaintiff's complaints of sexual harassment.

Before evaluating each complaint, a review of the controlling law is in order. To sustain her burden of proof under Title VII, § 1983 and N.Y.Exec.Law § 290, *et. seq.,* plaintiff must show by a preponderance of the evidence that the

employer's conduct " 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.' " *Meritor Savings Bank, FSB, v. Vinson,* 477 U.S. at 65, 106 S.Ct. at 2404 (quoting 29 C.F.R. § 1604.11(a)(3) (1985)). A hostile work environment exists "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' ... that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment.' " *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 19, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (quoting *Meritor,* 477 U.S. at 65, 67, 106 S.Ct. at 2404, 2405) (some internal brackets and quotation marks omitted); *Karibian v. Columbia University,* 14 F.3d 773, 779 (2d Cir.), *cert. denied,* 512 U.S. 1213, 114 S.Ct. 2693, 129 L.Ed.2d 824 (1994). Whether a workplace should be viewed as hostile or abusive—from both a reasonable person's standpoint as well as the victim's subjective perception—can only be determined by considering the totality of the circumstances. *Harris,* 510 U.S. at 22, 114 S.Ct. at 371.

*Tomka v. Seiler Corporation,* 66 F.3d 1295, 1305 (2nd Cir., 1995). New York law on hostile environment sexual harassment differs from federal law in an important respect. "Under new York law, in order to recover against an employer, the complainant must demonstrate that the employer acquiesced in the discriminatory conduct or subsequently condoned it (*see, Matter of State Div. of Human Rights [Greene] v. St. Elizabeth's Hosp.,* [66 N.Y.2d 684], at 687 [1985] ...)." *Father Belle Community Center v. N.Y.S. Div. of Human Rights on Complaint of King,* 221 A.D.2d 44, 642 N.Y.S.2d 739 (4th Dept.1996), *lv. denied* 89 N.Y.2d 809, 655 N.Y.S.2d 889, 678 N.E.2d 502 (1997); *but cf. Gallagher v. Delaney,* 139 F.3d 338, 345 (2nd Cir.1998) ("[c]laims brought under

Section 296 of New York Executive Law, New York's Human Rights Law, can be analyzed, for purposes of determining sufficiency of the evidence, in a manner virtually identical to those under Title VII" [citations omitted] ).

In a recent decision concerning an employer's liability for a supervisor's harassment of employees under him or her, the Supreme Court held,

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, *see* Fed.Rule.Civ.Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Faragher v. City of Boca Raton,* —— U.S. ——————, 118 S.Ct. 2275, 2292–93, 141 L.Ed.2d 662 (1998). "No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Id.,* 118 S.Ct. at 2275 (citation omitted).

Plaintiff is not required to prove sexual harassment by direct evidence. Seldom does an employer leave a "smoking gun" such as a notation in the employee's personnel file. *See Rosen v. Thornburgh,* 928 F.2d 528, 533 (2nd Cir.1991). It remains primarily the factfinder's province to determine what inferences to draw from circumstantial evidence. *Norton v. Sam's Club,* 145 F.3d 114, 1998 WL 272630, *4 (2nd Cir.1998).

■ In addition, in a hostile work environment claim plaintiff must establish a basis for the employer's liability rooted in common law agency principles. *Gallagher v. Delaney,* 139 F.3d 338, 347 (2nd Cir.1998). "This predicate can be established if ... c) the

employer provided no reasonable avenue for the complaint, or d) the employer knew (or should have known) of the harassment but unreasonably failed to stop it. If the evidence creates an issue of fact as to whether an employer's action is effectively remedial and prompt, summary judgment is inappropriate." *Gallagher v. Delaney,* 139 F.3d at 347–48 (citations omitted).

■ As indicated, plaintiff also asserts a claim that defendant denied her certain benefits of employment in retaliation for her past complaints of harassment. Retaliation claims are examined under a three step process. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

> On a motion for summary judgment, (1) plaintiff must demonstrate a prima facie case of retaliation, (2) defendant then has the burden of pointing to evidence that there was a legitimate, non-retaliatory reason for the complained of action, and (3), if the defendant meets its burden, plaintiff must demonstrate that there is sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation.

*Gallagher v. Delaney,* 139 F.3d 338, 349 (2nd Cir.1998) (citations omitted). "To make out a prima facie case of retaliation, plaintiff must show: 1) participation in a protected activity known to the defendant; 2) an employment action disadvantaging the plaintiff, and 3) a causal connection between the protected activity and the adverse employment action." *Id.* In reviewing the evidence before it on this motion, the Court finds an issue of fact raised with regard to the reason for plaintiff's transfer to Newark.

■ In the case at bar, plaintiff asserts a claim on non-quid pro quo sexual harassment, also known as hostile work environment sexual harassment. She claims that over the course of several years she suffered insults, derogatory comments and offensive pranks because of her sex. Plaintiff's affidavit is revealing. Though it is nonspecific with regard to dates, the picture painted is one of consistent harassment and intimidation by primarily three co-equal employees

in the Grounds and Motor Vehicles Departments. *See* Madeline Kolp Affidavit (July 27, 1998) [document # 21] (hereinafter Affidavit). The Court finds that the conduct she alleges occurred rises to the level of "severe or pervasive" required to make out a prima facie case of sexual discrimination due to a hostile work environment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

From her Affidavit it appears the harassment began in earnest approximately six months into her employment with defendant. Affidavit, at 1. Al Barkum, a married coequal employee, forcibly kissed plaintiff while she was leaving work for the day. A co-employee and witness to the incident, Phil Fico, encouraged her to report the incident to the plant superintendent, then Mark Eckert. Affidavit, at 1–2. She did so. The following day when she reported for work, plaintiff learned that everyone in the work center knew of her complaint. Plaintiff then relates, "[a]fter that episode, a lot of sexual harassment started happening." Affidavit, at 1–2. Plaintiff describes incident after incident of harassing behavior by the men employed in the Grounds and Motor Vehicle Departments, the two departments in which plaintiff spent most of her employment with defendant. Those included swearing, vulgar language, pornographic material displayed where she could find it, and a pair of underwear with ketchup hung in her locker. Affidavit, at 2.

In her Complaint, plaintiff lists particular instances of harassing behavior out of the many described in her Affidavit. She claims in paragraphs 13 and 14 of her Complaint that a non-supervisor, Tom Bellone, consistently gave her orders which she refused. Bellone, she claims, then engaged in "name calling of a sexual nature." When plaintiff complained about this situation to the then plant superintendent, Hugh Stock. Stock gave her a verbal reprimand and told plaintiff to cooperate with Bellone. This incident occurred in January 1989.

Defendant submitted the affidavit of Christine Schauseil, the Associate Personnel Administrator at defendant New York State Office of Mental Health Rochester Psychiatric Center. Defendant's notice of motion [document # 10], Exhibit 2 (hereinafter Schauseil Affidavit). Schauseil presented evidence of the applicable detailed grievance process negotiated between the defendant Office of Mental Health and the Civil Service Employees Union. *See* Article 34, Agreement Between the Civil Service Employees Association, Inc. and the State of New York, Operational Services Unit (1988–91), attached as Exhibit A to Schauseil's Affidavit(hereinafter the Agreement). The process requires the employee to obtain a grievance form from the union, fill it out and give it to the union steward who brings the complaint to the Personnel Office, though the employee may also bring the form directly to Personnel. The complaint is logged into the office and, in appropriate circumstances, is sent to the supervisor for a written response. Under the union contract, within thirty days of filing the grievance, a "first step" meeting is held with the personnel administrator, a union representative and the grievant.

If no resolution is reached at this meeting, a "second step" meeting can be requested by the union representative, or the employee. A representative from the Bureau of Employee Relations of the Office of Mental Health, usually from outside the Rochester area, presides over this second step meeting as a hearing officer. Also present are the union representative and a field representative, who are present to represent the grievant. Following the issuance of a "second step" decision by the hearing officer, the union may file a further appeal under the "third step" process outlined in Article 34 of the Agreement. The fourth step is arbitration.

In addition to Schauseil's affidavit, defendant also filed the affidavit of Augusto Mañón, the Affirmative Action Administrator II and III at the defendant Office of Mental Health Rochester Psychiatric Center. Defendant's notice of motion [document # 10], Exhibit 3. Mañón stated that he would receive complaints of violations of New York's Human Rights Law or Title VII of the Civil Rights Act of 1964 for Rochester Psychiatric Center directly from aggrieved employees. Once he verified the complaint was one which

fell within those laws, Personnel Office members would investigate the complaint by "interviewing all known parties, any witnesses and the potential respondent(s) to the allegations." Mañón Affidavit. Mañón would then review the report produced "to determine whether there was a supportable basis for the verified complaint." Mañón Affidavit. That is, he would determine whether more than one person attested to the information. If sustained, Mañón would then meet with the administrative personnel to determine a course of action to correct the problem.

Substantiated reports were sent to the Executive Director of the Rochester Psychiatric Center who could accept or modify the recommendations for corrective action, or direct a new investigation be conducted. After corrective action, a report on that action was sent to Mañón, who would then close the file after conducting a three, six or twelve month follow-up. This process was known as an internal complaint. Mañón's department was also responsible for investigating external complaints, that is, complaints made to agencies outside the Office of Mental Health and submitted by those outside agencies for investigation to the Office of Mental Health.

The Office of Mental Health Rochester Psychiatric Center published a "Rules of Conduct" as part of the orientation materials given to all new employees. *See* "Rules of Conduct," Rochester Psychiatric Center, Policy and Procedure # 1603 (issued 1/83, revised 12/84), attached as Exhibit A to Mañón's Affidavit. Part VI of that policy document, entitled "Relations with Fellow Employees," in paragraph A, stated, "Employees should be treated by fellow employees in a manner that assures their personal, legal, human and civil rights." Paragraph B stated, "Employees should treat each other with dignity, courtesy and respect regarding their sex, race, religion, creed, age, and cultural identity." paragraph D stated, "Employees shall not verbally mistreat, abuse or insult other employees by the use of racial slurs, ethnic jokes, sexual innuendoes, or profanity."

In addition, Rochester Psychiatric Center published on bulletin boards throughout the facility their "Policy Statement on Sexual Harassment." *See,* Rochester Psychiatric Center, Policy Statement on Sexual Harassment, attached as Exhibit B to Mañón's Affidavit.

On or about January 7, 1989, Mañón's office received plaintiff's complaint relative to Tom Bellone and Stock's conduct described in paragraphs 13 and 14 of the Complaint. Mañón's office sent an acknowledgment of receipt to plaintiff on January 24th, and investigated the complaint. Minority Group Specialist Bonita Y. Kirton conducted the investigation. The entire investigation is attached as Exhibit H to Mañón's Affidavit. Kirton's nine-page investigation report substantiated plaintiff's complaint and recommended remedial action, finding that Stock failed to correct the problems. Exhibit H. The remedial action included not retaining Stock and training for all supervisors and all staff in plaintiff's department concerning sexual harassment and supervisory training.

Mañón provided training on sexual harassment to all work center supervisors and Stock was terminated as an employee on or about May 10, 1989. Further training was conducted by an outside agency, The Center for Women's Government, Inc., who provided what Mañón characterized as an Extended Cabinet Level Briefing on Sexual Harassment on August 24, 1989 [1].

It is apparent that defendant undertook to remedy what was found to be an incident of sexual harassment. Notwithstanding the response, it appears from plaintiff's Affidavit that the harassment continued.

■ Plaintiff's complaint, in paragraph 15, raises another issue of alleged disparate treatment in that plaintiff stated that Bob McGuire, a fellow employee, was permitted by Tom Bellone to transport a patient and earn overtime pay improperly. Affidavit, at 95. Plaintiff filed a sworn external complaint with the New York State Division of Human

---

1. Defendant's counsel, Assistant Attorney General Carlos Rodriguez, represented during oral argument that the date, 1988, in Mañón's Affidavit was incorrect and the correct date was 1989. Plaintiff's counsel agreed with the 1989 date.

Rights on May 15, 1989[2] which included this complaint, along with others. *See* Mañón Affidavit, Exhibit J. The complaint was investigated by Allan B. Manley, Human Rights Specialist with the New York State Division of Human Rights. Manley referred the matter to Mañón for investigation and Mañón completed his investigation and sent a report to Manley on June 29, 1989. Mañón Affidavit, Exhibit Y. Manley's report, attached to Mañón's Affidavit as Exhibit Z, relates that plaintiff's complaint regarding the patient transport job was sustained and she was "made whole" by defendant. The investigation revealed that through an oversight, the supervisor in the work control center failed to review the voluntary overtime roster before assigning the trip to McGuire who was immediately available. The New York Division of Human Rights found no probable cause to sustain plaintiff's complaint. Exhibit Z.

Plaintiff's Affidavit, however, relates a different story. Plaintiff alleges that she was, in essence, blacklisted by having her name permanently at the bottom of the overtime list with a notation that she was not to be called for overtime. Affidavit, at 92–93. This factual discrepancy must be resolved at trial.

█ In paragraph 16 of her federal Complaint, plaintiff alleges that co-employees, "with full knowledge of defendant Hugh Stock constantly made remarks suggesting sexual involvement of plaintiff with other co-employees." She included this issue in her Human Rights complaint filed on May 15, 1989. Mañón Affidavit, Exhibit J. Mañón stated, in his affidavit, that the allegations were investigated, but "[t]he investigation failed to yield sufficient information to make a determination that this action took place." Mañón Affidavit, at 12. Bonita Y. Kirton's investigation, attached as Exhibit H to Mañón's Affidavit, revealed that Charlie Dalberth and Bob Halley encouraged an outside

firm's delivery person to date plaintiff and that jokes of a sexual nature were being made pertaining to plaintiff. Dalberth was plaintiff's immediate supervisor and Stock was the plant superintendent. If Stock had already reprimanded the department employees on sexual harassment prior to this incident and following Barkum's assaultive kiss, then the Court must resolve issues of credibility concerning the allegations of Stock's involvement in, or tacit approval of, harassing behavior which appears to have occurred after the reprimand and prior to the outside agency training.

█ Plaintiff relates in paragraph 18 of her federal complaint that she was discriminated against by her co-workers who coaxed her into moving "a cabinet which had been filled with heavy materials unbeknownst to plaintiff. The cabinet fell upon plaintiff causing injury to her leg and resulting in considerable lost time from work." Mañón's affidavit states that plaintiff was cautioned about lifting heavy objects without assistance in January 1987. Mañón Affidavit, at 14. According to the accident report, attached to Mañón's Affidavit as Exhibit P, the injury occurred on March 27, 1987. The record before the Court does not show that she made any complaint concerning this incident. *See, e.g.,* Madeline Kolp Affidavit [document # 21]. Her supervisor at the time in the Grounds Department, Chuck DeHaven, sent her to the medical department. Affidavit, at 3. Plaintiff stated in her Affidavit that she received "affirmative action" on this incident. *Id.*

Plaintiff was off duty from April 13, 1987 until June 23, 1987 and again from August 25, 1987 until October 4, 1987 as a result of the injury. Schauseil Affidavit, at 3. She was placed off duty again on October 20, 1987, because Rochester Psychiatric Center could not accommodate her doctor's work restrictions. *Id.* Plaintiff complained that a co-

---

**2.** Neither plaintiff's federal court complaint, nor her Human Rights complaint, Exhibit Y of Mañón's Affidavit, state the date of the incident. The Court notes that in addition to this 1989 complaint, the record contains a memorandum dated November 21, 1991 from the New York State Division of Human Rights relating to an overtime issue in October 1990 and March 1991; neither of these two grievances, however, specifically state the overtime related to transportation of a patient. Thus, the Court considers the overtime issue in her federal complaint, paragraph 15, to relate to the 1989 complaint.

employee, Charles Kinmartin, was also disabled, but accommodated. According to defendant, Kinmartin's limitations, however, permitted him to perform all aspects of his job and operate all motor vehicles except buses, thus he was given a six month accommodation on the condition that he sought corrective action. Defendant's Statement of Facts [document # 12], at 9–10. Plaintiff was still in the grounds department at the time and was not promoted to Motor Vehicle Operator until March 23, 1988. Schauseil Affidavit, at 4. She complains, in paragraph 19, that as a result of retaliation, defendant refused to accommodate her limitation, unlike Kinmartin's. Kinmartin's limitation had to do with glaucoma for which he was being treated. He was, as a result, unable to become certified to operate buses. Mañón's Affidavit, Exhibit V. The accommodation was reevaluated in June 1991 in light of the impending reduction in force. Kinmartin's accommodation was extended another six months on the condition that the vision problem be corrected. Exhibit V. It appears from notations on the doctor's letter in Exhibit V to Mañón's Affidavit, that Kinmartin's eyes were not correctable "through refraction or any therapy."

Plaintiff's limitations did affect her ability to work in the Grounds Department as she was unable to lift heavy objects or perform any repetitious knee bending. *See* Exhibit X, attached to Mañón Affidavit (no heavy lifting and strenuous activities needing repetitious knee bending for three months). As of February 7, 1989, plaintiff's physician placed a three-month restriction on plaintiff's ability to perform heavy lifting and repetitious knee bending. Exhibit X. As of the date of Christine L. Schauseil's memorandum, February 8, 1989, plaintiff's condition was not clear and she was scheduled to see a specialist for an examination in March 1989. Exhibit X. In her deposition, at page 60, attached to Defendant's Motion as Exhibit 4, plaintiff states that defendant's motor pool consisted of about six vehicles, all of which had automatic transmissions, and three buses, two of which had automatic transmissions. If so, there is a question presented as to why she could not have been permitted to operate the automatic transmission vehicles notwithstanding the restrictions about repetitive motion of her left leg and a limitation on her ability to lift weights. Since plaintiff's recollection of dates is almost nonexistent, and defendants have not placed the incidents chronologically, the Court is unclear as to whether this incident took place while she was still assigned to the Grounds Department, or in the Motor Vehicle Department and whether it was following the injury sustained when the heavy cabinet fell on her, or when she was doused with a hose and hit her leg against an item in the garage. Inasmuch as there are factual issues to resolve, these must be addressed at trial.

■ In paragraph 20 of her federal Complaint, plaintiff states that on or about May 3, 1991, she was informed of impending lay offs due to budget constraints. She alleges that defendant improperly allowed a probationary worker in the same department as plaintiff to return to his former position as a cleaner and allowed another co-worker a veteran's preference, leaving plaintiff exposed to imminent lay off. In her affidavit, plaintiff relates that she was informed that only one position in the Motor Vehicle Department would be cut and assumed that when the one co-worker was permitted to return to his former position as a cleaner, that would be the position cut. Affidavit, at 8–9. The employee who returned to a former position accepted a demotion in lieu of lay off and the employee who was given a veteran's preference provided the necessary documentation to support that determination. *See* Defendant's Statement of Facts [document # 12], at 10–11. Though plaintiff conceded in her Affidavit, and again through counsel at oral argument that the veteran provided the necessary documentation to sustain his veteran's preference, she was never offered the ability to return to her former position in the Food Service Department to avoid lay off, or, as it turned out, a transfer to an Office of Mental Health facility in Newark, New York. *See* Affidavit, 8–9 (she would have preferred to return to Food Service than to have to move to Newark to avoid lay off). This circumstance raises a question about defendant's reason for the transfer and presents the

**332**

issue of whether it was pretextual, an issue which can only be resolved at trial.

Plaintiff's allegations in paragraph 23 of her federal Complaint do not relate to any specific incident, but encompass all the alleged sexual harassment she claims to have suffered while employed by defendant. Defendant contends she was accorded every right to grieve instances of alleged harassment and defendant promptly pursued and remedied any instance of sexual harassment. Comparing plaintiff's allegations in her Affidavit and Complaint with defendant's proof before the Court, there remain factual issues for resolution at trial.

### CONCLUSION

In accordance with the Court's opinion, it is hereby

ORDERED that defendant's motion for summary judgment [document #10] is denied; and it is further

ORDERED that the case against defendants NEW YORK STATE DEPARTMENT OF AUDIT AND CONTROL, NEW YORK STATE DEPARTMENT OF CIVIL SERVICE, HUGH STOCK, PLANT MANAGER, NEW YORK STATE OFFICE OF MENTAL HEALTH is dismissed; and it is further

ORDERED that trial will commence as previously scheduled on Monday, August 10, 1998, before the Court without a jury. The Court shall issue a separate pretrial order.

IT IS SO ORDERED.