**Ricardo A. DiROSE, Plaintiff,**

v.

**R.J. McCLENNAN, et al., Defendants.**

No. 94–CV–7688.

United States District Court,
W.D. New York.

Oct. 29, 1998.

Ricardo A. DiRose, Wallkill, NY, pro se.

William Lonergan, Assistant Attorney General, Buffalo, NY, for Defendants.

DECISION and ORDER

SIRAGUSA, District Judge.

*INTRODUCTION*

This is a prisoner civil rights action, brought pursuant to 42 U.S.C. § 1983.

Plaintiff is an inmate at Southport Correctional Facility, Pine City, New York, and claims defendants, individually and collectively, violated his First, Fourth, Eighth, and Fourteenth Amendment rights with regard to processing incoming and outgoing correspondence. The case is before the Court on defendants' motion for summary judgment filed May 1, 1996 [document # 17]. For the reasons stated below, the motion is granted.

### FACTS

Plaintiff was incarcerated as a result of five felony convictions in Broome, Onondaga, and Albany Counties in 1985 and 1992. In December of 1993, plaintiff was imprisoned at Clinton Correctional Facility. A search of plaintiff's cell at Clinton turned up two typewritten letters: one, a nine page letter dated September 21, 1993, addressed to "Dee," the other, a three page letter dated September 18, 1993, addressed to, "Hi Love." Both letters were allegedly written by plaintiff. In the longer letter, plaintiff detailed plans for his escape from Clinton Correctional Facility by having an outside accomplice arrange for a phony funeral visit, at which time plaintiff's friends would ambush plaintiff and the two guards assigned to escort him to the funeral, kidnap plaintiff, and tie-up, or shoot, the guards. In the shorter letter, plaintiff asked his correspondent about arranging a memorial service for an apparently hypothetical sister in the Peace Corps or Red Cross, who was killed in Afghanistan. As a result of the letters, plaintiff was found guilty of violating Rule 108.10, Escape, at a disciplinary hearing held on December 24, 1993, at which he admitted writing the longer of the two letters. He was transferred to Southport Correctional Facility, a prison where 641 disciplinary case management inmates, transferred from other New York State correctional facilities, were housed.

Because of the charges that brought him to Southport, corrections officers instituted a mail watch on all of plaintiff's incoming and outgoing mail, commencing March 8, 1994. The mail watch order, signed by then Deputy Superintendent McGinnis and approved by Superintendent McClennan, required plaintiff's mail to be forwarded from the mailroom to administrative offices, where it was searched by either First Deputy Superintendent McGinnis or Captain Morse. Mail defined as "legal mail" was not opened. Following the search, the letters were returned to the mailroom for delivery to plaintiff. The mail watch operated under the authority of Department of Correctional Services (D.O.C.S.) directives 4422(III)(B)(8) and 4422(III)(G)(4) and (5). A copy of the directive is attached as Exhibit I to Defendant McGinnis's Affirmation [document # 23] filed in this case.

The mail watch was renewed periodically from March 8, 1994 until October 28, 1998. During the mail watch, the facility intercepted a letter dated Thursday, May 26, written by plaintiff and addressed to Carol Rowe, in which he proposed to escape with the assistance of a fellow inmate who was due to be released shortly.

Although plaintiff refers in his complaint to Carol Rowe as his wife, there is no evidence of such a relationship. On the contrary, First Deputy Superintendent McGinnis affirms, in paragraph 14 of his Affirmation, that Carol Rowe was not married to the plaintiff and instead resided with her husband in Syracuse, New York. He further alleges that she sent plaintiff money, purchased items for him, and sent packages to other inmates and friends of plaintiff, acting as a go-between for correspondence between plaintiff and other inmates. Attached to First Deputy Superintendent McGinnis' Affirmation as Exhibit D, are copies of letters between Carol Rowe and plaintiff, demonstrating plaintiff's alleged attempts to circumvent correspondence procedures in effect at Southport Correctional Facility.

On March 14, 1994, the facility intercepted catalogs which had been sent to plaintiff by Carol Rowe. Inmates in Special Housing Unit Southport were not permitted at that time to receive catalogs. The catalogs were returned to Ms. Rowe by the facility. On March 16, 1994, blank legal forms (a felony complaint form and a blank arrest warrant) were received by the facility mail room addressed to plaintiff. The forms were sent to the Department of Corrections counsel by

defendant McGinnis. D.O.C.S. counsel advised that the materials should be delivered to plaintiff and they eventually were.

On March 24, 1994, two letters from plaintiff written to Carol Rowe were returned by the United States Postal Service, opened by the mailroom staff, and returned to plaintiff. The letters were opened due to insufficient postage pursuant to New York State Department of Corrections Services Directives # 4422 (III)(B)(10), (19), and (20). The facility opened the returned mail to prevent contraband from entering the prison and to prevent the practice of "kiting," where a letter is deliberately provided with insufficient postage and the return address is not that of the actual sender of the letter, but another inmate. Since inmates at Southport and other special housing units are segregated and kept incommunicado, an inmate may attempt to communicate with another inmate through "kiting." In addition, defendant McGinnis, in his Affirmation, cites other reasons supporting the policy of opening mail which is returned for insufficient postage. Those include preventing the promotion of crime and disorder within the facility, preventing inmates from informing fellow inmates how to testify at disciplinary hearings, preventing the revelation of the identification of a confidential informant, and insuring that contraband is not transferred between inmates.

On April 4, 1994, a letter from the Department of Motor Vehicles addressed to plaintiff was opened and the contents confiscated. The letter arrived at Southport and was handled as general correspondence, not privileged correspondence.[1] Although the letter was improperly processed under Directive # 4422, it was nevertheless found to contain non-privileged contraband: the driving record and abstract of a Department of Correctional Services employee.

On April 11, 1994, plaintiff filed a grievance alleging he had been improperly denied the receipt of catalogs. Plaintiff was eventually successful in changing the institution's policy prohibiting the receipt of catalogs by inmates. On July 12, 1994, defendant McGinnis issued a memorandum stating that catalogs would be allowed and would count as part of the allowable publications per departmental directive # 4933 for S.H.U. inmates. Affirmation of M.P. McGinnis [document # 23], Exhibit P.

Plaintiff's April 20, 1994 memorandum concerning the unreceived magazines was fully investigated and following that investigation, plaintiff made no further complaint on the issue.

On July 11, 1994, plaintiff was found to have violated D.O.C.S. Directive 4421(III)(E)(3), of having received on June 23, 1994 a magazine on credit (inmates are only allowed to obligate their funds for one-time purchases, not purchases on credit). Plaintiff was eventually found not guilty of this alleged violation. On July 11, 1994, plaintiff submitted nine letters using one disbursement form to cover postage and checks for three of the letters. These were returned to him with an explanation of the proper procedure for submitting disbursement forms to cover every separate expenditure. On July 12, 1994, plaintiff was found to have sent to another inmate a letter containing that inmate's parole decision without written consent of the Superintendent as required by D.O.C.S. Directive 4421. Also on July 12, 1994, letters from plaintiff to Carol Rowe were returned for insufficient postage and opened and inspected. On July 13, 1994, plaintiff's outgoing letters requesting college catalogs were intercepted and returned to him with a memorandum from then First Deputy Superintendent M.L. Hollins stating that inmates at Southport were not permitted to take college courses. Plaintiff's grievance was eventually adjudicated in his favor and he was permitted to request catalogs, but not enroll in courses. On July 27, 1994, plaintiff was alleged to have committed correspondence violations by communicating

---

1. "Privileged Correspondence" is accorded greater protection in the correctional facility per the terms of D.O.C.S. Directive 4421. It includes correspondence addressed to an inmate from government or public officials, an attorney, or medical personnel. In order to inspect privileged correspondence, Directive 4421(III)(B)(4) requires that it be opened in the presence of the inmate. The directive authorizes the removal of contraband, checks, cash, money orders and items not entitled to the privilege through as unobtrusive an inspection as possible.

with a federal inmate without prior approval and by smuggling legal work for other inmates through Carol Rowe.

On August 24, 1998, prison officials confiscated incoming mail addressed to plaintiff which consisted of (1) a letter from F.Y.I. Publications regarding their line of self-disintegrating checks and false documents; (2) a letter from a remailing service offering to forward their clients' mail and substituting their return address for the client's; and (3) a letter from the Central Training Academy on its investigative techniques training.

Plaintiff successfully grieved the facility's decision to keep him in handcuffs during a visit with his attorney, and a memorandum issued by Captain Morse on August 16, 1994, made clear that inmates were not to be handcuffed when visiting with their lawyers. The Court finds insufficient evidence to show that newspapers or a book were withheld from plaintiff while at Southport.

## DISCUSSION

The law on summary judgment is well settled. Summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893 (3rd Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the "evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 106 S.Ct. 2548, 2555 (1986). Once the moving party has met its initial obligation, the opposing party must produce evidentiary proof in admissible form sufficient to raise a material question of fact to defeat a motion for summary judgment, or in the alternative, demonstrate an acceptable excuse for its failure to meet this require-

ment. *Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187 (5th Cir.1991); Fed.R.Civ.P. 56(f). Once the moving party has met its burden, mere conclusions or unsubstantiated allegations or assertions on the part of the opposing party are insufficient to defeat a motion for summary judgment. *Knight v. United States Fire Ins. Co.,* 804 F.2d 9 (2d Cir.1986).

Although prisoners do not lose all their legal rights when incarcerated, the courts have recognized certain limitations on inmate's First Amendment rights. See, *Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *see generally* Prisoners and the Law, 3–3, *et. seq.* (Robbins, 1998). Prison regulations affecting prisoner's Constitutional rights will be valid, "if [the regulations are] reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

With regard to inmate correspondence, the Supreme Court set forth a test in *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), which was further modified by its decision in *Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). Restrictions on incoming correspondence are subjected to a reasonableness test whereas restrictions on outgoing correspondence are subjected to a more restrictive test. For incoming correspondence, regulations are "valid if [they are] reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). For restrictions on outgoing correspondence,

the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of a expression.... [Prison officials] must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation. Second, limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved.

*Bell v. Wolfish,* 441 U.S. 520, 552, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In addition, the Supreme court provided further guidance in *Pell v. Procunier,* 417 U.S. 817, 827, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), noting that judgments regarding prison security "are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these conditions, courts should ordinarily defer to their expert judgment in such matters."

■ Plaintiff's transfer to the restrictive prison at Southport was as a result of his having been found to be an escape risk due to the letters located in his cell during a routine search. The contents of those letters, which the Court has read, clearly indicate that plaintiff was planning an escape, had carefully thought out all the details of that plan, and was willing to urge the use of deadly force in order to effect his plan. Although plaintiff attempts to characterize the letters as "a hoax to expose certain officials who were reading, tampering with, and destroying my mail illegally," the Court is of the opinion that prison officials properly interpreted the letters as a potential threat to the security of the institution and properly took action to avoid a breach in security by transferring plaintiff to Southport. Once at Southport, defendants properly applied their own internal directives, specifically Directive # 4422, III(B)(8)(a), and instituted a watch on all of plaintiff's correspondence. One court in the Western District of New York has already thoroughly addressed the Constitutionality of D.O.C.S. Directive 4422, and this Court finds no case law to the contrary. *Webster v. Mann,* 917 F.Supp. 185 (W.D.N.Y. 1996). The Court finds that the defendants' heightened scrutiny of plaintiff's correspondence was fully justified by the concern for security. In all but two of the aforementioned incidents above, the Court finds that prison officials were justified in their actions.

■ In the two instances involving incoming mail, specifically catalogs and records from the Department of Motor Vehicles, the Court finds that although the department's internal directives were not properly followed, the errors were eventually remedied and do not rise to the level of a Constitutional deprivation. The Court concurs with prison officials' classification of the Department of Motor Vehicles Driving Abstract record of a corrections officer as contraband, considering the need for keeping the addresses of corrections officers from inmates to avoid possible intimidation. Although plaintiff complains that this action prevented him from accessing the judicial system, it appears that alternatives were available, for example, by addressing a motion to the appropriate court with regard to the problems of service of process on corrections officers and requesting the assistance of that court in serving the complaint. With regard to the rule banning incoming catalogs, which was changed as a result of plaintiff's grievance, the matter has been rendered moot by the change, and plaintiff has presented no evidentiary proof in admissible form sufficient to raise a material question of fact to defeat the motion for summary judgment on this point.

■ In view of the Court's analysis of plaintiff's First Amendment claim, the Court finds it unnecessary to thoroughly evaluate his claims under the Eighth and Fourteenth Amendments. There is no evidence in this record that he was subjected to cruel and unusual punishment, and although prison officials did improperly open privileged mail out of plaintiff's presence, a deviation from the department's rules is an insufficient basis for a § 1983 claim. *See Bolden v. Alston,* 810 F.2d 353, 358 (2d Cir.1987), *cert. denied,* 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987); *see also Purnell v. Lord,* 952 F.2d 679, 685 (2d Cir.1992) (doubting whether Directive 4422 creates a liberty interest under the Due Process Clause). The Court therefore finds that defendants have met their burden of proof and it is hereby,

ORDERED that defendants' motion for summary judgment [document # 17] is granted and the case is dismissed.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Decision and Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is hereby

denied. *Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

"Privileged Correspondence" is accorded greater protection in the correctional facility per the terms of D.O.C.S. Directive 4421. It includes correspondence addressed to an inmate from government or public officials, an attorney, or medical personnel. In order to inspect privileged correspondence, Directive 4421(111)(B)(4) requires that it be opened in the presence of the inmate. The directive authorizes the removal of contraband, checks, cash, money orders and items not entitled to the privilege through as unobtrusive an inspection as possible.